### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re Application Of<br><br>JUAN MARIA ALTGELT<br><br> Applicant <br>pursuant to 28 U.S.C. § 1782<br>For Judicial Assistance in Obtaining<br>Evidence For Use in Foreign and International<br>Proceedings. | Case No. |

### *EX PARTE* APPLICATION OF JUAN MARIA ALTGELT
### FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

JUAN MARIA ALTGELT ("Applicant") respectfully submits this *Ex Parte* Application for Judicial Assistance, pursuant to 28 U.S.C. § 1782, in obtaining documentary evidence for use in a foreign proceeding (the "Application"). In support thereof, Applicant states as follows:

### INTRODUCTION

1.     The facts relevant to this Application are set forth below and in the Declaration of Maximiliano N. D'Auro ("Declaration"), attached as **Exhibit 1**. The facts stated in the Declaration are incorporated herein by reference.

2.     Applicant seeks assistance from the United States District Court for the Eastern District of Pennsylvania to obtain documentary and testimonial evidence from Allison Kaye Deutsch, Robert Brink, Julia Andrea Deutsch, and Frederick Lawrence Deutsch (collectively, the "Discovery Targets"), who reside or are found in this District. Ex. 1 ¶ 5. Specifically:

   a.    Allison Kaye Deutsch resides in this District at 7763 Carlton Road, Coopersburg, Pennsylvania, USA 18036;

b.  Robert Brink, who is believed to be married to Allison Kaye Deutsch, resides in this District at 7763 Carlton Road, Coopersburg, Pennsylvania, USA 18036;

c.  Julia Andrea Brink resides in this District at 99 Misty Mdw., Perkasie, Pennsylvania, USA 18944; and

d.  Frederick Lawrence Deutsch resides in this District at 1249 Perry Road, Perkasie, Pennsylvania, USA 18944.

3.  The evidence is for use in a divorce proceeding in Argentina pending before Family Court Number 4 (the "Argentine Court"), sitting in the City of San Isidro, province of Buenos Aires (the "Foreign Proceeding"). Ex. 1 ¶ 27. Subject to the limitations set forth by the Civil and Commercial Procedural Code of the province of Buenos Aires, the rulings of the Argentine Court may be appealed to the Civil and Commercial of Court of Appeal of San Isidro,[1] to the Supreme Court of Justice of the province of Buenos Aires,[2] and to the National Supreme Court.[3] The Foreign Proceeding pertains to Applicant's divorce from his wife, Maria Isabel de Narvaez ("Mrs. De Narvaez"). Ex. 1 ¶ 4. Applicant has been married to Mrs. De Narvaez since December 10, 2003. Id. ¶ 7. Applicant and Mrs. De Narvaez separated on November 5, 2019, after which they began discussing their divorce and negotiating, among other issues, the distribution of marital property (the "Negotiation"). Id. ¶¶ 8-10. Applicant and Mrs. De Narvaez have been unable to reach an agreement, however, due to Mrs. De Narvaez's refusal to provide key documents and information about marital assets and her financial position. Id. ¶ 33. As a result, Applicant initiated the Foreign Proceeding on October 20, 2020 to obtain documents from the Argentine tax authority for use in the Foreign Proceeding and for inventory of the parties' marital assets by the Argentine Court. Id. ¶ 4. In conjunction with the records sought from the Argentine tax authority, the evidence sought by way of this

---

[1] Camara de Apelación en lo Civil y Comercial de San Isidro.
[2] Suprema Corte de Justicia de Buenos Aires.
[3] Corte Suprema de Justicia de la Nación Argentina.

Application is necessary, relevant to, and for use in Applicant's presentation of his formal divorce petition and for the Argentine Court's adjudication and distribution of marital assets. Id. ¶¶ 27-30.

4.      In 2014, during Applicant's marriage to Mrs. De Narvaez, Mrs. De Narvaez and her siblings purchased the entire share ownership in two corporations known as Tía Ecuador and Ta-Ta Uruguay (the "Acquired Shares") from Allison Kaye Deutsch, Julia Andrea Brink, Frederick Lawrence Deutsch, and a fourth individual who is not a Discovery Target, for an amount of approximately USD $200 million through a corporate and trust structure (the "Transaction"), the details of which are unknown to the Applicant. Ex. 1 ¶¶ 20-24. Upon information and belief, Allison Kay Detusch's husband, Robert Brink, was also involved in the Transaction. Id. ¶ 24.

5.      The details of the Transaction are of the utmost relevance to the Foreign Proceeding in Argentina because they are essential to the proper inventorying and distribution of martial assets. Ex. 1 ¶¶ 27-28. Specifically, there is a dispute as to whether the Acquired Shares that Mrs. De Narvaez acquired through the Transaction, which occurred during her marriage to Applicant, is marital property. Id. ¶¶ 31-32. Under Argentine law, any asset acquired by either or both spouses during the marriage by any reason other than inheritance, gift, or bequest is deemed to be marital property. Id. ¶ 29. Furthermore, any profits gained during the marriage are also considered marital property, regardless of whether the source of those profits is a non-marital asset. Id. ¶¶ 29-30. It is presumed, unless proven otherwise, that all assets existing at the termination of the matrimonial community are marital property. Id. ¶ 29.

6.      Without the assistance of this Court, it is highly unlikely that Applicant will be able to obtain the documents and testimony necessary for use in the divorce proceeding, which evidence is located in the Eastern District of Pennsylvania and is out of the reach of the Argentine Court overseeing the Foreign Proceeding. Ex. 1 ¶ 33. Applicant has already requested documents related

3

to the Transaction from Mrs. De Narvaez, but she claims that she does not need to provide documents related to the Transaction because the Acquired Shares are owned by a trust and are not marital property. Id. ¶¶ 33-34.

7.    Should the Court grant the Application, Applicant proposes to serve the subpoenas attached as **Composite Exhibit 2** on the Discovery Targets in substantially similar form.

## ARGUMENT

The Court should grant the Application because it satisfies the statutory requirements of Section 1782, and the discretionary factors weigh in favor of granting the requested relief.

## I.    Standard for Granting Relief.

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004).  Section 1782 "provide[s] for assistance in obtaining documentary and other tangible evidence as well as testimony." Id. at 248.  The statute reads, in pertinent part:

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.  By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement.  The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing.  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.  A person

4

> may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a).

Courts have distilled § 1782's language into a two-part test consisting of a mandatory component and a discretionary component for granting relief. First, a district court has discretion to grant an application for discovery under § 1782 where: (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person. In re Biomet Orthopaedics Switzerland GmbH, 742 Fed.Appx. 690, 695 (3d Cir. 2018) (hereinafter, "In re Biomet") (the statutory requirements are "modest prima facie elements"); In re Bayer AG, 146 F.3d 188, 193 (3d Cir. 1998); In re O'Keeffe, 646 F. App'x 263, 265 n.4 (3d Cir. 2016); accord Intel, 542 U.S. at 256-63 (addressing the factors).[4]

Next, once a district court has determined that the mandatory requirements for relief under § 1782 are met, the court is free to grant discovery in its discretion. In re Biomet, 742 F. App'x at 695-96; In re Ex Parte Application of Societe d'Etude, 2013 WL 6164435 at *3. To aid that discretion, the U.S. Supreme Court delineated the following four factors: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because the "need for

---

[4]     District courts may, and indeed typically do, grant § 1782 on an *ex parte* basis. See e.g., In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation Pour le Traitement du Mais, No. 13-MC-0266, 2013 WL 6164435 (E.D. Pa. Nov. 22, 2013) (hereinafter "In re Ex Parte Application of Societe d'Etude"); Kulzer v. Esschem, Inc., 390 F. App'x 88, 92 (3d Cir. 2010); see also Gushlak v. Gushlak, 486 F. App'x 215, 217 (2d Cir. 2012) ("it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*. The respondent's due process rights are not violated because they can later challenge any discovery request by moving to quash [a subpoena] pursuant to Federal Rule of Civil Procedure 45(c)(3).") (citing further authority therein) (summary order).

§ 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the Unites States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." Intel, 542 U.S. at 264-65; In re Biomet, 742 F. App'x  at 696 (quoting Intel, 542 U.S. at 252).

A district court should apply the Intel factors in support of § 1782's "twin aims" of "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." In re Biomet, 742 F. App'x at 696 (quoting Intel, 542 U.S. at 252).

As demonstrated below, Applicant satisfies the statutory requirements and, therefore, this Court should grant the relief sought in the Application.

## II.   **Applicant Meets the Mandatory Requirements for Granting Relief.**

### A.   **The Discovery Targets reside or are found in this District.**

The court's authority to compel discovery under § 1782 extends to any "person," including both individuals and entities, that "resides or is found in" the district in which the application is made. 28 U.S.C. § 1782(a); see also Oxley v. Wyeth Labs., Inc., No. CIV. A. 91-1285, 1992 WL 185590, at *2 (E.D. Pa. July 23, 1992) ("Pursuant to 28 U.S.C. § 1782, this Court may order a person residing within the Eastern District of Pennsylvania to give testimony or to produce documents for use in a proceeding in a foreign or international tribunal.").

Here, all four Discovery Targets reside or are found in this District. Specifically, the Discovery Targets are individuals residing at the following residential addresses: (i) Allison Kaye

Deutsch and Robert Brink at 7763 Carlton Road, Coopersburg, Pennsylvania, USA 18036; (ii) Julia Andrea Deutsch at 99 Misty Mdw., Perkasie, Pennsylvania, USA 18944; and, (iii) Frederick Lawrence Deutsch at 1249 Perry Road, Perkasie, Pennsylvania, USA 18944. Ex. 1 ¶ 5. Each of these residential addresses is located within the Eastern District of Pennsylvania. Id.

Accordingly, Applicant satisfies the first mandatory requirement under § 1782.

**B.  The discovery sought is for use in a proceeding in a foreign tribunal.**

Likewise, Applicant satisfies the second requirement, as the discovery sought through the instant Application is for use in the Foreign Proceeding. Ex. 1 ¶¶ 25, 27, 32. The Foreign Proceeding is pending before Family Court Number 4, sitting in the City of San Isidro, province of Buenos Aires. Id. ¶ 27. Applicant will use the discovery obtained in this District to confirm and litigate the inventory of marital assets subject to distribution in the Foreign Proceeding and to aid the Argentine Court's adjudicative role in the Foreign Proceeding. Id. ¶¶ 28-34.

A § 1782 application's "for use" requirement is satisfied by showing that the materials the applicant seek will be used at some stage of a foreign proceeding that is either pending or within reasonable contemplation at the time the application is made. Mees v Buiter, 793 F.3d 291, 301 (2d Cir. 2015). In Mees, the court elaborated that, "[t]he plain meaning of the phrase "for use in a proceeding" indicates something that will be employed with some advantage or serve some use in the proceeding – not necessarily something without which the applicant could not prevail." Mees at 298. The court further noted, "[u]nder § 1782, an applicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chance of success." Id. at 299.

Here, the evidence Applicant seeks through the Application will be used at the present stage of the Foreign Proceeding pending before the Argentine Court. Ex. 1 ¶¶ 25, 27-34. Applicant has taken and continues to take concrete steps—such as engaging in the Negotiation with Mrs. De

Narvaez in good faith, requesting the evidence sought from her directly, and petitioning to the Argentine Court for assistance in obtaining records and information relevant to marital property and Mrs. De Narvaez's assets—to advance the Foreign Proceeding and assist the Argentine Court in the resolution of Applicant's divorce. Ex. 1 ¶¶ 9-10, 27, 33. Applicant seeks evidence about assets acquired by Mrs. De Narvaez during her marriage with Applicant, which, under Argentine law would be considered marital property. Ex. 1 ¶¶ 29-30. Applicant will be able to use the requested discovery to his advantage in the Foreign Proceeding because it will help him identify and inventory marital assets and to litigate his rights to the same; he is required to present to the Argentine Court an inventory of the parties' assets so that the court can then adjudicate the distribution of marital assets. Ex. 1 ¶¶ 27-33 .

Accordingly, the second mandatory requirement of § 1782(a) is satisfied, because the discovery obtained through the Application will be used in the Foreign Proceeding pending before a foreign tribunal.

### C.  **Applicant is an Interested Person.**

A person who has "participation rights" and "possesses a reasonable interest in obtaining judicial assistance… qualifies as an interested person within any fair construction of that term." Intel, 542 U.S. at 256-7 (2004) (internal citations omitted). "An interested person includes a party to the foreign litigation, whether directly or indirectly." Kulzer v. Esschem, Inc., 390 F. App'x 88, 92 (3d Cir. 2010); see Lancaster Factoring Co. Ltd. v. Mangone, 90 F.3d 38, 42 (2d Cir. 1996) ("The legislative history to §  1782 makes plain that 'interested person' includes a party to the foreign litigation.") (internal citations omitted).

Here, Applicant is an interested person in the Foreign Proceeding because he is one of the parties to the pending divorce proceeding and is required to present specific evidence to the

Argentine Court to make his case on several issues, the most relevant here being the inventory and distribution of marital assets. Ex. 1 ¶¶ 4, 6. Applicant and his wife have been separated for over a year and have already reached a preliminary, temporary agreement as to Mrs. De Narvaez's payments to Applicant pending resolution of their divorce. Ex. 1 ¶ 8-10. However, the Negotiation has reached an impasse regarding the inventorying and distribution of marital property, and Applicant has been forced to seek the assistance of the Argentine Court to obtain the evidence necessary to assist the court in ruling on the issue. Ex. 1 ¶¶ 27, 33. Hence, Applicant meets the third statutory requirement under 28 U.S.C. § 1782(a).

### D.  The Application does not require the disclosure of privileged or other protected matter.

The Application does not "require[] disclosure of privileged or other protected matter[.]" In re Chevron Corp., 633 F.3d at 164. Applicant seeks only non-privileged documents and deposition discovery. To the extent the Discovery Targets possess relevant privileged materials, they may withhold those materials consistent with the obligations imposed by the Federal Rules of Civil Procedure. See In re Application of Global Energy Horizons Corp., 647 F. App'x 83, 85 (3d Cir. 2016) ("§ 1782 expressly incorporates the Federal Rules of Civil Procedure[.]").

## III.  This Court Should Exercise its Discretion in Favor of Granting Relief.

As noted above, once the District Court has determined that the mandatory requirements for relief under § 1782 are met, the Court is free to grant discovery in its discretion. In re Biomet, 742 F. App'x at 695-96; In re Ex Parte Application of Societe d'Etude, 2013 WL 6164435 at *3. The Court must consider the following factors in exercising its discretion: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because the "need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway

abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the Unites States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." <u>Intel</u>, 542 U.S. at 264-65.

Additionally, the Court's discretion must be guided by the twin policy aims of § 1782: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts. <u>In re Biomet</u>, 742 F. App'x at 696 (quoting <u>Intel</u>, 542 U.S. at 252). Here, these discretionary factors weigh in favor of granting the requested relief.

First, the Discovery Targets are not parties and are not expected to become parties to the Foreign Proceeding and are otherwise believed to be outside the jurisdiction of the Argentine Court. Ex. 1 ¶ 35. Accordingly, this factor weighs in favor of granting the Application. <u>See</u> <u>Intel</u>, 542 U.S. at 264 ("[T]he need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."); <u>Kulzer</u>, 390 F. App'x at 92 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.") (quoting <u>Intel</u>, 542 U.S. at 264).

Second, there is no indication that the Argentine Court overseeing the Foreign Proceeding would not be receptive to the documentary and testimonial evidence sought through the instant Application. Ex. 1 ¶ 36. On the contrary, it is anticipated that the Argentine Court will be receptive to evidence obtained pursuant to a court-order and Section 1782. <u>Id</u>. ¶ 36. Moreover, the Third Circuit has held that inquiries of the requested evidence's admissibility, probative value, or discoverability in a foreign proceeding "would be in tension with § 1782." <u>In re Biomet</u>, 742 Fed.

App'x at 697 (internal quotations and citations omitted); <u>John Deere Ltd. v. Sperry Corp.</u>, 754 F.2d 132, 136 (3d Cir. 1985); <u>In re O'Keeffe</u>, 646 F. App'x at 267; <u>In re Chevron Corp.</u>, 633 F.3d at 163; <u>In re Letters Rogatory Issued by Nat. Court of First Instance in Commercial Matters N. 23 of Fed. Capital of Argentinean Republic</u>, 144 F.R.D. 272, 277 (E.D. Pa. 1992).

Third, the evidence sought through the instant Application would likely be admissible and does not otherwise circumvent any proof-gathering restrictions in Argentina. Ex. 1 ¶ 36.

Finally, this Application is not unduly intrusive or burdensome. The proposed requests to the Discovery Targets, as provided in the sample subpoenas attached as Composite Exhibit 2, are limited to testimony and to documents related to a single, specific transaction. Ex. 1 ¶ 37. Moreover, the document requests are limited to the period from 2014 until the present. <u>Id</u>. Finally, the information sought is the type of evidence that the Discovery Targets would regularly retrieve and produce as third parties or actual parties in litigation.

As such, each discretionary factor identified by the <u>Intel</u> Court weighs in favor of granting the Application.

WHEREFORE, Applicant respectfully requests this Court enter an Order, in the proposed, or substantially similar, form attached hereto as **Exhibit 3**:

    (a)    exercising its discretion pursuant to 28 U.S.C. § 1782 and granting this *Ex Parte* Application for Judicial Assistance;

    (b)    granting Applicant leave to conduct discovery pursuant to the Federal Rules of Civil Procedure, including, but not limited to, leave to serve the subpoenas, in substantially the same form as the sample subpoenas attached as **Composite Exhibit 2** to this Application;

(c)     reserving jurisdiction to grant Applicant leave to serve follow-up subpoenas

        on any other person or entity located in this District as may be necessary to

        obtain the evidence described in the Application; and

(d)     granting any other relief this Court deems just and proper.


Dated:  December 8, 2020                    **SHERMAN, SILVERSTEIN, KOHL,**
                                            **ROSE & PODOLSKY, P.A.**

                                    By:     _s/Bruce S. Luckman_
                                            Bruce S. Luckman, Esquire (38636)
                                            308 Harper Drive, Suite 200
                                            East Gate Corporate Center
                                            Moorestown, New Jersey 08057
                                            Telephone: (856) 662-0700
                                            Facsimile: (856) 488-4744

2574266.1

Exhibit "1"

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

In Re Application Of

JUAN MARIA ALTGELT                                Case No.

                                    Applicant

pursuant to 28 U.S.C. § 1782
For Judicial Assistance in Obtaining
Evidence For Use in Foreign and International
Proceedings.

**DECLARATION OF MAXIMILIANO N. D'AURO IN SUPPORT OF**
**APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

I, the undersigned, Maximiliano N. D'Auro, under oath and penalty of perjury, pursuant to 28 U.S.C. § 1746, and duly authorized, declare the following:

1.      I am over the age of 18 and, except as otherwise noted, provide this Declaration based on my own personal knowledge.

2.      I am a licensed attorney at the Argentine law firm of Estudio Beccar Varela located at Tucuman 1, 4th Floor, City of Buenos Aires, Argentina. I have been retained by Juan Maria Altgelt (the "Applicant"), to represent him in connection with a pending divorce proceeding involving Applicant and his wife, Maria Isabel de Narvaez ("Mrs. De Narvaez").

3.      I submit this Declaration in support of Juan Maria Altgelt's application for an Order, pursuant to 28 U.S.C. § 1782, seeking judicial assistance and leave to serve the Discovery Targets (as defined below) with subpoenas to obtain documents and testimony for use in the divorce proceeding in Argentina.

4.      Applicant is an Argentine citizen residing in San Isidro, province of Buenos Aires, Argentina. Applicant is an architect. Applicant is the plaintiff in foreign proceedings in Argentina pending

before the Family Courts sitting in the City of San Isidro, province of Buenos Aires (the "Argentine Court"). On October 20, 2020, Applicant initiated proceedings before the Argentine Court to obtain documents from the Argentine tax authorities. Those documents are needed, along with the evidence sought by way of this application, for Applicant to file the divorce petition before the Argentine Court, which must be accompanied by a proposal for the division of marital property. The divorce petition and proposal for the division of marital property must, to the fullest extent possible, and at the time of filing, list all known marital property for division by the Argentine Court.

5.      Applicant seeks assistance from the United States District Court for the Eastern District of Pennsylvania to obtain documentary and/or testimonial evidence from Allison Kaye Deutsch, Robert Brink, Julia Andrea Deutsch, and Frederick Lawrence Deutsch (together, the "Discovery Targets").  Upon information and belief, Allison Kaye Deutsch, Robert Brink, Julia Andrea Deutsch, and Frederick Lawrence Deutsch all reside and are found in the Eastern District of Pennsylvania at the following residential addresses: (i) Allison Kaye Deutsch and Robert Brink: 7763 Carlton Road, Coopersburg, Pennsylvania, USA 18036; (ii) Julia Andrea Deutsch: 99 Misty Mdw., Perkasie, Pennsylvania, USA 18944; and, (iii) Frederick Lawrence Deutsch: 1249 Perry Road, Perkasie, Pennsylvania, USA 18944. Each of these residential addresses is located within the Eastern District of Pennsylvania.

6.      Specifically, Applicant seeks evidence to support a claim for the inventorying and distribution of marital property against Mrs. De Narvaez, within the framework of the Argentine divorce proceedings, as further described below. The gathering of relevant information and documents in the Eastern District of Pennsylvania will enable Applicant to file the divorce petition before the Argentine Court.

2574260.1

**Factual Background**

7.      The Applicant has been married to Mrs. De Narvaez since December 10, 2003. They are currently separated and living apart but continue to be legally married. They have three children together, all of them under 18 years of age. Applicant has two other children from a prior relationship.

8.      Applicant and Mrs. De Narvaez separated on November 5, 2019, at which time Applicant left the marital home, where Mrs. De Narvaez and their children still live.

9.      Soon thereafter, they began discussing their divorce and, among other issues, the distribution of marital property (the "Negotiation"). Mrs. De Narvaez told Applicant that he should contact her attorney in order to commence the Negotiation. At that moment, Applicant retained me and my law firm to assist him in the Negotiation and imminent divorce filings before the Argentine Court.

10.      Soon after the Negotiation began, Applicant and Mrs. De Narvaez entered into a preliminary agreement (the "Preliminary Agreement") whereby they agreed to a temporary plan addressing several family-related issues, including childcare and child visitation arrangements, for the pendency of the Negotiation. Moreover, Applicant and Mrs. De Narvaez agreed that they would negotiate, through their attorneys and in good faith, a comprehensive divorce agreement that would address issues such as the division of their marital property. In light of that understanding and agreement, Mrs. De Narvaez agreed to provide (i) all the necessary information to reach such agreement, and (ii) monthly payments to Applicant of USD $9,600, which payments would be deducted from the total sum due to Applicant upon the distribution of the marital property. Of great significance here is the fact that almost the entirety of the marital property is administered by Mrs. De Narvaez.

11.      At this point, it is important to describe Mrs. De Narvaez's estate. Mrs. De Narvaez is one of the members of the De Narvaez Steuer family, a wealthy and well-known family in Argentina, and is the granddaughter of Carlos Steuer.

12.      Carlos Steuer, together with Federico Deutsch, were the founding members of *Tía*, a South American multinational group of companies dedicated to the retail business, which was very active in Argentina, Colombia, Perú, Ecuador, and Uruguay. Today, the group maintains a major presence in Ecuador and Uruguay.

13.      After Carlos Steuer's death, his only heir, Doris Steuer, Mrs. De Narvaez's mother, took over the family business in Carlos Steuer's stead. After the death of Doris Steuer, her children—Francisco De Narvaez, Juana De Narvaez, and Mrs. De Narvaez, together with their descendants (the "De Narvaez Family")—became the owners of the family business,[1] which is today led by Francisco De Narvaez. Francisco De Narvaez is also a public figure in Argentina due to his involvement in Argentine national politics.

14.      By the end of the 1990's, the De Narvaez Family and their partner, the sole son and heir of Federico Deutsch named Gustavo Andrés Deutsch ("Andy Deutsch"), sold the *Tía* business in Argentina for an estimated USD $700 million. Later, the De Narvaez Family and Andy Deutsch sold their business operations in Colombia and Peru. They also jointly consolidated and expanded their business in Ecuador and Uruguay.

15.      The De Narvaez Family and Andy Deutsch have had enormous success in their business during the past two decades (while Applicant and Mrs. De Narvaez have been married), which positioned their businesses as leading retail stores in both Ecuador and Uruguay.[2]

---

[1] There is a fourth sibling, Carlos De Narvaez, who was bought out of the family business.
[2] The *Tía* entity in Ecuador is called Tiendas Industriales Asociadas (Tía) S.A. ("Tía Ecuador"), and the one in Uruguay is called Ta-Ta S.A. ("Ta-Ta Uruguay").

2574260.1

16.     By way of example, and to demonstrate the size and success of these companies, Tía Ecuador has distributed dividends in an amount of approximately USD $329,841,833 between 2003 and 2018, and Ta-Ta Uruguay has distributed dividends in an approximate amount of USD $66,730,546 between 2005 and 2018.

17.     Furthermore, starting in 2013, Ta-Ta Uruguay began to aggressively increase its working capital and commenced an aggressive acquisition process, through which it acquired major retail businesses such as "Multi Ahorro" and "Multi Ahorro Hogar," the e-market platform "WooW Market Place," and the wholesaler "Frontoy." Ta-Ta Uruguay also acquired San Roque S.A., a retail chain of pharmacies.

18.     For years, the administration of the described De Narvaez Family estate has been entrusted to a Swiss wealth management firm called Treuco, which acts as the "family office" for the De Narvaez Family, including Mrs. De Narvaez. Treuco is the creator and primary administrator of the Tía Ecuador and Ta-Ta Uruguay corporate structure, and it also acts as the manager of the family's several trusts and financial accounts (bank accounts, investment funds, etc.).[3]

19.     In 2014, the De Narvaez Family's partner in Tía Ecuador and Ta-Ta Uruguay, Andy Deutsch, died tragically when his private plane crashed in the suburbs of Buenos Aires, Argentina.

20.     A few weeks after the accident, the De Narvaez Family purchased the entirety of Andy Deutsch's share ownership in Tía Ecuador and Ta-Ta Uruguay (the "Acquired Shares") from Andy Deutsch's heirs for an amount of USD $200 million (the "Transaction") through several corporate and trust structures. Although the details of such structures are unknown to the Applicant, our independent investigations lead us to believe that the following entities or trusts

---

[3] Applicant is aware of these facts because he was not only a "user" of Treuco's services for many years, but also because (i) Francisco De Narvaez testified to these facts, as further described in paragraph 22, *infra*, and (ii) there is evidence linking officers of Treuco with Tia Ecuador's corporate structure.

2574260.1

may have been involved in the Transaction: on behalf of the De Narvaez Family, Grant Invest PTE LTD (Limited Private Company – Singapore), Innoparticipations LP (Body Corporate – New Zealand), Innovent Investment LP (Limited Partnerhip – Scotland UK), Innovent Investment SA (Aktiengesellschaft - Switzerland), Tienda Investment PTE LTD (Excempt Private Company Limited By Shares - Singapore), Innovent Services Limited (Limited Company – New Zealand), Dulas Holding SA (St. Vincent & Granadines), Innovent Partner LP (Private Limited Company – Scotland UK), Chenin Investment PTE LTD (Private Company Limited By Shares - Singapore), EEMO Investment Corp (St. Vincent & Granadines), Epiro Property SA (Belize), Namika Commercial Corp (Belize), Myana Business Limited (St. Vincent & Granadines); and on behalf of Andy Deutsch and/or his children, Sulma Trust, Sulma I Trust, Sulma II Trust, Sulma III Trust, United Textile Works LLC, Enterprises Textiles Reunies Societe Anonyme, VEREINIGTE TEXTILWERKE AKTIENGESELLSCHAF, Pierron Properties, Grant Investment Properties LTD, Dribel SA, Inmovera, Iru ANY SRL.[4] The details of the Transaction are of the utmost relevance to the divorce proceeding in Argentina, the proper inventorying and distribution of martial assets and this Application and request for judicial assistance. As described in additional detail below, without the assistance of this Court, it is highly unlikely that Applicant will be able to obtain the documents and testimony necessary for the divorce proceeding, which evidence is located in the Eastern District of Pennsylvania and is out of the reach of the Argentine Court.

21.    Within the framework of Andy Deutsch's inheritance proceedings in Argentina,[5] and because of a challenge regarding the estate's assets filed by an extramarital son of Andy Deutsch (Gustavo Jeshua Caporale Deutsch), both Mrs. De Narvaez and her brother Francisco de Narvaez, were called upon

---

[4] This list is non-exhaustive and contains only the names known to Applicant and my office at the present stage of our ongoing investigation.
[5] In re Deutsch, Gustavo Andrés y otros c/ Villarruel, Martha Noemí – Villarruel Fernando Abel s/ sucesión ab intestato, pending before the National Civil First Instance Court N° 47, and a matter of public record.

to give testimony as witnesses regarding their businesses and interests in common with Andy Deutsch. We have attached translated excerpts of their testimony as **Exhibit A**, where they testify as to certain details about the Transaction.

22.      The most relevant details given by Mrs. De Narvaez and her brother (apart from confirming the family history described above) are:

a.   When asked about where the *Tía* business is located, Mrs. De Narvaez responded, "*In Argentina, Uruguay, and Ecuador, and also in Peru and Colombia but these were later sold.*"

b.   Regarding Andy Deutsch's participation in the *Tía* business in Ecuador and Uruguay, Mrs. De Narvaez testified, "*I was not part on the board of directors, nor was I in charge. It would be that it was talked [sic] with my brother Francisco, since he has an office that was in charge.*"[6]

c.   When asked what businesses he had in common with Andy Deutsch, Francisco De Narvaez replied, "*Mainly the business of Tata Uruguay, retail commercial enterprise, and Tía Ecuador, retail commercial enterprise.*"

d.   When asked about how those businesses continued after Andy Deutsch's death, Francisco De Narvaez replied, "*Few weeks after Mr. Deutsch passed, our trust corporate structure purchased from Mr. Deutsch's children their corporate structures….*"

e.   When asked which of Andy Deutsch's children were involved in the Transaction, Francisco De Narvaez replied, "*the three daughters.*"[7]

---

[6] The referenced "office" is the Treuco family office discussed above in paragraph 18, *supra*.
[7] The identities and significance of these heirs are discussed further in paragraphs 23-24, *infra*.

f.  When asked who advised Mr. Deutsch's three daughters in the Transaction, Francisco De Narvaez replied, "*I know that the transaction was carried out between our trust structures and theirs.*"

g.  When asked if he could provide the documents relating to the Transaction, Francisco De Narvaez replied, "*It is not for me to do so, the documents are under the control of the trust structures in which I have no authority.*"

h.  When asked whether he knew Robert Brink and whether Mr. Brink is married to Allison Kay Deutsch, Francisco De Narvaez replied, "*Mr. Brink participated in those decisions.*"

i.  Regarding the financial terms of the Transaction, Francisco de Narvaez provided the following details: (i) the approximate amount of the transaction was USD $200 million, (ii) at the time of his testimony (May 2017), approximately one fourth of the purchase price had been paid, and (iii) the outstanding balance would be paid over the course of 10 years, of which three years have elapsed from the time of his testimony.

j.  Finally, Francisco de Narvaez provided the following important details: (i) the trust structures have been in place since the '50s when the families' relationship began and they remain in place today, and (ii) the beneficiaries of said trust structures are his own children and the Applicant's children with Mrs. De Narvaez.

23.    According to the "Declaration of Heirs"[8] issued in Andy Deutsch's inheritance proceedings (described above in paragraph 22), Andy Deutsch's heirs are: (i) Julia Andrea Deutsch, (ii) Frederick Lawrence Deutsch, (iii) Catalina Micaela Deutsch, (iv) Allison Kay Deutsch, and (v) Gustavo

---

[8] The Declaration of Heirs (in Spanish, "*Declaratoria de Herederos*") is one of the most important decrees issued in any inheritance proceeding because it identifies the heirs of the deceased.

Jeshua Caporale Deutsch. A translation of this ruling (as publicly available in the court's website) is attached as **Exhibit B**.

24.       Based on the foregoing there is reason to believe that Julia Andrea Deutsch, Frederick Lawrence Deutsch, Catalina Micaela Deutsch, and Allison Kay Deutsch (together with her husband, Robert Brink) were involved in the Transaction.[9] Catalina Micaela Deutsch is not a Discovery Target given that she does not reside in and is not found in the Eastern District of Pennsylvania.

<u>**The Relevance of the Requested Discovery**</u>

25.       Applicant seeks assistance from the United States District Court for the Eastern District of Pennsylvania to obtain relevant and probative documentary and testimonial evidence from the Discovery Targets for use in the foreign divorce proceeding pending before the Argentine Court.

26.       Applicant seeks targeted documents and testimony from the Discovery Targets about the Transaction and generally falling within the following categories:

    a.       Documents pertaining to the Transaction (e.g., purchase agreements, seller financing agreements, guarantee or security agreements, etc.);

    b.       Corporate and trust documents referencing the Transaction and the parties and final beneficiaries thereto (e.g., certificates of incorporation, trust deeds, legal opinions, etc.); and

    c.       Documents regarding the Transaction's purchase price (e.g., identification of payors and payees, participating financial institutions, payment instructions, receipts, wire transfers, etc.).

27.       The information and documents sought through this Application are for use in the foreign divorce proceeding. Such evidence is necessary to allow the Argentine Court to determine whether the

---

[9] Gustavo Jeshua Caporale Deutsch was not involved in the Transaction, seeing that he asked the Argentine court overseeing the inheritance proceedings to trace the estate's assets.

shares acquired by the De Narvaez Family in the companies Tia Ecuador and Ta-Ta Uruguay by way of the Transaction should be regarded as marital property. The evidence sought through this Application is for use in adjudicative family and civil proceedings in Argentina (the "Argentine Proceeding"), which has commenced following the impasse in the Negotiation regarding the inventorying and distribution of marital property. Specifically, Applicant recently asked the Argentine Court to grant certain preliminary measures in the pending matter of Altgelt, Juan c/ De Narvaez Steuer, Maria Isabel s/ Medidas Preliminares (Art. 323 CPCC), pending before Family Court Number 4, sitting in the City of San Isidro, province of Buenos Aires.[10] The requested preliminary measures mainly sought for the Argentine Court to order the Argentine Federal Tax Authority ("AFIP") to provide a copy of Mrs. De Narvaez's tax returns, including information as to assets she declared as her property before such authority. The Argentine Court granted Applicant's request for preliminary measures, and the same Argentine Court is to hear and adjudicate the Argentine Proceeding once the Applicant submits the divorce petition. Subject to the limitations set forth by the Civil and Commercial Procedural Code of the province of Buenos Aires, the rulings of that Argentine Court may be appealed to the Civil and Commercial of Court of Appeal of San Isidro,[11] to the Supreme Court of Justice of the province of Buenos Aires,[12] and to the National Supreme Court.[13] The evidence sought through this § 1782 Application would be used in the Argentine Proceeding in conjunction with the evidence obtained from the AFIP pursuant to the referenced Argentine Court order.

28.    The evidence sought through this § 1782 Application is crucial, first, to allow Applicant to confirm and litigate the inventory of marital assets subject to distribution in the Argentine Proceeding and to aid the Argentine Court's adjudicative role in the Argentine Proceeding.

---

[10] Juzgado de Familia de San Isidro.
[11] Camara de Apelación en lo Civil y Comercial de San Isidro.
[12] Suprema Corte de Justicia de Buenos Aires.
[13] Corte Suprema de Justicia de la Nación Argentina.

10

29.     Under Argentine law, any asset acquired by either or both spouses during the marriage by any reason other than inheritance, gift, or bequest is deemed to be marital property. *See* Código Civil y Comercial de la Nación [Civil and Commercial Code] art. 465 (Arg.). Furthermore, any profits gained during the marriage are also considered marital property, regardless of whether the source of those profits is a non-marital asset. *Id.* It is presumed, unless proven otherwise, that all assets existing at the termination of the matrimonial community are marital property. [Civil and Commercial Code] art. 466 (Arg.).

30.     Regardless of the fact that most of Mrs. De Narvaez's property was inherited from her mother after her death in 2004 (and therefore regarded as non-marital property), such non-marital property has generated enormous profits throughout the marriage, which, under Argentine law, are regarded as marital property. Moreover, many of those profits were used to acquire new assets, which new assets are also marital property under applicable Argentine law.

31.     In that sense, the main point of contention is whether the Acquired Shares acquired by the Mrs. De Narvaez through the Transaction should be considered and adjudicated as marital property.

32.     Because the Transaction was consummated during the Applicant's marriage with Mrs. De Narvaez, the Acquired Shares should be regarded as marital property. Furthermore, it is reasonable to believe that, given the facts discussed in Francisco De Narvaez's testimony in paragraph 22, the dividends distributed by Tía Ecuador and Ta-Ta Uruguay are being used to pay the purchase price over time. Because those dividends should be regarded as marital property, any goods acquired and paid for with those funds should also be regarded as marital property.

33.     Because Mrs. De Narvaez and her family were in charge of the administration of all of her assets (including marital property), the preliminary stage of the Negotiation was focused on obtaining the relevant information and documents to allow Applicant to assess what assets (including the Acquired

Shares resulting from the Transaction) should be considered marital property. However, after several meetings between Mrs. De Narvaez's attorneys and myself, that information and/or documents were not provided. It was only after the exchange of several demand letters that Mrs. De Narvaez provided some documents to Applicant, including some personal tax filings. However, none of those documents included Ms. De Narvaez's share participation in Tia Ecuador and Ta-Ta Uruguay, which is the De Narvaez Family's most widely known business holding. Mrs. De Narvaez claims that she does not need to deliver documents related to the Transaction because the shares are owned by a trust, which is a clear effort by her to shield the marital property from disclosure based on a formality, despite the fact that is publicly known the participation and control of the De Narvaez Family in those businesses.

34.    Because Mrs. De Narvaez denies that this property is marital property and refuses to provide the relevant documents, Applicant has no way, other than through this Application, to obtain evidence to negate Mrs. Narvaez's contentions and denials. By obtaining the requested judicial assistance and discovery from the Discovery Targets, Applicant will be able to prove that the Acquired Shares were purchased during the marriage and that the corporate dividends accrued during the marriage (also regarded as marital property) are being used to pay the agreed purchase price.

35.    According to public information, the Discovery Targets are individuals who reside or are found in this District, and as such, are proper discovery targets pursuant to 28 U.S.C. § 1782.  In addition, the Discovery Targets are not expected to become a party to the proceeding pending before the Argentine Court and are otherwise believed to be outside the jurisdiction of the Argentine Court.

36.    Further, it is anticipated that the Argentine Court would be receptive to the documentary and testimonial evidence sought through the instant Application, pursuant to a court-order and Section 1782.  Such evidence will likely be admissible before the Argentine Court, and the Application does not

circumvent any proof-gathering restriction under Argentine law by filing this Application and seeking the judicial assistance of this Court.

37.     The discovery sought to be served on the Discovery Targets is not intrusive or unduly burdensome. Applicant is requesting a very targeted set of documents and information limited to a single transaction as described above.  Furthermore, Applicant limits his requests to the period between 2014 and the present time.

### Conclusion

38. In light of the foregoing, Applicant respectfully submits that all of the requirements of 28 U.S.C. § 1782 are met:

   a.      The Discovery Targets reside and are found in this District;

   b.      Applicant is an "interested person" within the meaning of the statute;

   c.      Applicant seeks to obtain documents and testimony for use in a foreign proceeding; and

   d.       The Discovery Targets have relevant and pivotal documents and information concerning a martial asset (or assets) which will be the subject of the divorce proceeding in Argentina.

39. No previous application for this relief has been made in the United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of December 2020, in Buenos Aires, Argentina.

By: _____   _____   _____
        Maximiliano N. D'Auro

13

# Exhibit "A"



Poder Judicial de la Nación

JUZGADO CIVIL 47

70798/2015

DEUTSCH, GUSTAVO ANDRES Y OTROS c/ VILLARRUEL
MARTHA NOEMI-VILLARRUEL FERNANDO ABEL
s/SUCESION AB-INTESTATO

En Buenos Aires, a los 17 días del mes de mayo de 2017, siendo las
1030 horas y llamadas que fueran de viva voz las partes, a la
audiencia del día de la fecha comparece en calidad de testigo la Sr. De
Narvaez Francisco de nacionalidad argentina, estado civil casada,
mayor de edad, profesión u ocupación empresario, con domicilio
Ocampo 2866, caba. quien acredita su identidad con DNI: 18758371,
quien previo juramento de decir verdad que prestó en legal forma y
habiendo sido impuesto de las sanciones prescriptas por el art. 275 del
Código Penal en caso de falso testimonio, pasa a responder las
preguntas obrantes en el cuestionario que antecede. A la 1ra: POR
LAS GENERALES DE LA LEY: NO LE COMPRENDEN.
PREGUNTADO SOBRE EL MOTIVO POR EL CUAL FUE
CITADO A DECLARAR EL TESTIGO RESPONDE: Para que diga
el testigo que relación tenía con el causante: contesto. Una relación de
muchas décadas, que proviene de su padre y mi abuelo que comenzó
en Praga en Checoslovaquia en el año 1930. Que negocios tuvieron en
común con el causante durante la vida del mismo. Contesto: las dos
familias comenzaron en el año 1933 la relación entre Deutsch padre y
Steuer en Praga. Del causante no recuerdo el año de nacimiento.
Luego vino la guerra y se separaron las familias por cuestiones de
nazismo y se volvieron a encontrar en el año 1945 los fundadores el
abuelo del declarante y el padre de Federico. Los dos fundadores del
año 33 se encuentran en el año 1945 en Argentina. Eran Checos. Y
recomienzan el negocio de Tia en el año 1947. Comercio minorista
renovador. El vínculo de los dos fundadores estaba basado en una

*Fecha de firma: 17/05/2017*
*Alta en sistema: 22/05/2017*
*Firmado por: HORACIO MADERNA ETCHEGARAY, JUEZ DE 1RA INSTANCIA*



VALENTINA ACC
TRADUCTORA PÚBLIC.
MAT. Tº XXII I
INSCRIPCIÓN EN
MAT. Lº I Tº I Fº 7
INSCRIPCIÓN EN CTPIPBA

base de confianza y mutuo respeto en donde siempre primo el interés del negocio por sobre las situaciones personales o individuales. Esa tradición perduro a lo largo de las próximas generaciones como legado. Don Federico tuvo un solo hijo Gustavo Andrés y don Carlos una sola hija Doris que mantuvieron las mismas características en el vínculo. Ambos fundadores murieron a principios de los 70 casi simultáneamente y su lugar fue ocupado por sus únicos dos herederos Gustavo y mi madre Doris hasta que falleció mi madre en el año 2004 a la que yo reemplace en el vínculo de las dos familias, hasta que falleció el causante Gustavo Andrés en el 2014. Que negocios en común mantenía desde el 2004 y hasta el 2014 con el causante. Esencialmente el negocio de Tata Uruguay empresa comercial minorista y Tia Ecuador empresa comercial minorista .como continuo después de fallecido Gustavo Andrés esos negocios en lo que respecta al testigo. A las pocas semanas de fallecido el Sr. Deutsch nuestra estructura societaria de fideicomisos le compro a los hijos del Sr, Deutsch sus estructuras societarias muy pocas semanas después de su muerte en el año 2014.- Cual fue el monto aproximado de esas operaciones. En el orden de 200 millones de dólares. Cuanto se pagó al día de la fecha. Aproximadamente una cuarta parte. Sabe quiénes de los hijos de Deutsch intervinieron en esas operaciones. Las tres mujeres. Sabe que empresa las asesoraba a ellas en esa operación. Se que la transacción se hizo entre nuestras estructuras fiduciarias nuestras y las de ellos.- sabe quien administra esa estructura fiduciaria de ellas. No. podría usted aportar a este aportar la documentación. No me corresponde a mi están en manos de las estructuras fiduciarias de las cuales yo no tengo autoridad. Sabe cómo y cuándo se va a pagar el saldo. Transcurrieron tres año y el plazo es de 10 años el plazo total.- Usted controla el Trust que hizo esa transacción. No. no tengo poder de decisión sobre el Trust. Ni control sobre el mismo. No tengo conocimiento si tenían o no autoridad las hijas. Generalmente en la

Fecha de firma: 17/05/2017
Alta en sistema: 22/05/2017
Firmado por: HORACIO MADERNA ETCHEGARAY, JUEZ DE IRA,INSTANCIA



#27562839#179030185#20170517112308807



Poder Judicial de la Nación

JUZGADO CIVIL 47

estructura de los Trust no tienen autoridad los Trustie. Los pagos los
hacen el Trust. Entendió que el pago se le hace al trust de los señores
Deutch.- como considera hacerse en lo sucesivo para que los pagos
pendientes estén bajo control judicial exclusivamente en lo referente a
los herederos de Deutsch.- no tengo los conocimiento jurídicos para
contestar. Quien se encargó de esta operación Los Trusties del
declarante están en Zúrich. Están estructuras están desde el año 50
desde el inicio de la sociedad entre las dos familias y continúan
actualmente. Los beneficiarios de dicha estructura son mis hijos y mis
sobrinos pero no tienen autoridad. En esa operación se incluyó Tata.
En relación al aeropuerto de Perkasie si acompaño al causante a ese
aeropuerto. No, no sabe quién lo administra. Conoce al Grupo Treuco.
No es un grupo es un Bufet de abogados que administra Trust. Sabe si
es la gente que administra el Trust de la familia Deutsch. No lo sabe si
ese Bufet administra ese Trust de la familia Deutsch. El Sr. Gustavo
Andrés siempre fue una persona muy reservada en todo lo relacionado
en la forma en la cual el administraba sus propiedades o tenencias y
nunca fue motivo de conversación entre las partes. Si compartió
alguna estructura fiduciaria con el causante. Ninguna. Si conoce a
Robert Brink. Si está casado con Alison. Que es una de las hijas del
causante. El Sr. Brink participo de estas decisiones. no conmigo. No
existiendo más preguntas, finaliza el acto, firmando el declarante y los
comparecientes, previa lectura y ratificación, ante mí que doy fe.

Fecha de firma: 17/05/2017
Alta en sistema: 22/05/2017
Firmado por: HORACIO MADERNA ETCHEGARAY, JUEZ DE 1RA.INSTANCIA

#27562839#179030185#20170517112308807

Case 5:20-mc-00111-CFK   Document 1   Filed 12/08/20   Page 31 of 89

**TRADUCCIÓN PÚBLICA** ----------------------------------------------------------------------------------

**SWORN TRANSLATION** -------------------------------------------------------------------------------

[On the left lower corner of all pages of the document there appears an expression that reads as follows:] Date of signature: 05/17/2017 – Entered in the system: 05/22/2017 – Signed by: HORACIO MADERNA ETCHEGARAY, JUDGE OF FIRST INSTANCE[1]-----------------------------------------

[On the right lower corner of all pages of the document there appears a bar code with an expression underneath that reads as follows:] #27562839#179030185#20170517112308807---

[There appears a coat of arms.] ------------------------------------------------------------------------

[On the upper margin of pages 1 and 3 of the document, there appear the following expressions:] Judiciary of the Nation – Civil Court of First Instance No. 47 ----------------------------

70798/2015------------------------------------------------------------------------------------------------

GUSTAVO ANDRES DEUTSCH ET AL. v. MARTA NOEMI VILLARUEL, FERNANDO ABEL VILLARRUEL, INTESTATE SUCCESSION (*DEUTSCH, GUSTAVO ANDRES Y OTRO c/ VILLARRUEL MARTHA NOEMI-VILLARRUEL FERNANDO ABEL s/ SUCESION AB-INTESTATO*)-----------------------------------------------

In Buenos Aires, on May 17, 2017, at 10:30 a.m., the parties having been called out loud to the hearing taking place today, personally appears as witness Mr. Francisco De Narvaez, Argentinean, married, of age, profession or occupation: businessman, domiciled at Ocampo 2866, Autonomous City of Buenos Aires, who proves his identity with a National Identity Document No. 18758371, who, after having duly sworn to tell the truth and having been made aware of the sanctions prescribed by Section 275 of the Criminal Code in case of perjury, proceeds to answer the questions in the preceding questionnaire. To the 1st: THE WITNESS IS QUESTIONED ON WHETHER ANY IMPEDIMENTS PRESCRIBED BY LAW APPLY: NONE. WHEN ASKED ABOUT THE REASON WHY HE WAS SUMMONED TO TESTIFY, THE WITNESS REPLIES: so that the witness states the relationship with the decedent: he answered. A relationship of several decades, arising from his father and my grandfather, which started in Prague, in Czechoslovakia in 1930.  Which business did they have in common with the decedent during his life. He replied: both families started, in 1933, the relationship between Deutsch father and Steueur in Prague. I do not remember the birth year of the decedent. After that, the war came and the families were separated due to Nazism issues, and the founders met again in 1945, the witness's grandfather and Federico's father. Both founders of the year 1933 meet in 1945 in Argentina. They were Czech. And they began again the Tia business in 1947. Refreshing retail commerce. The relationship between the founders was based on trust and mutual respect,

---

[1] Translator's Note: The wording of the source document is quite poor. I have made a balance between correcting the errors that can be corrected due to their nature and leaving the ones that cannot, marked by "[*sic*]", in order for the translation to be true to the source text.-----------------------------------------

where the business interest always prevailed over personal or individual situations. This tradition lasted through the following generations as a legacy. Mr. Federico had only one son, Gustavo Andrés, and Mr. Carlos, only one daughter, Doris, who kept the same characteristics in the relationship. Both founders passed in the early 1970s almost at the same time, and their place was taken by their only two heirs, Gustavo and my mother, Doris, until my mother passed in 2004, and I replaced her in the relationship between the two families, until the decedent Gustavo Andrés passed in 2014. What business in common did you have between 2004 and 2014 with the decedent. Mainly, the business of Tata Uruguay, retail commercial enterprise, and Tia Ecuador, retail commercial enterprise. How did these businesses continue as regards the witness after Gustavo Andrés passed. Few weeks after Mr. Deutsch passed, our trust corporate structure purchased from Mr. Deutsch's children their corporate structures very few weeks after his passing in 2014 [*sic*]. Which was the approximate amount of those transactions. Around USD 200 million. How much has been paid to this date. Approximately one fourth. Do you know which of Deutsch's children intervened in those transactions. The three daughters. Do you know which company advised them in that transaction. I know that the transaction was carried out between our trust structures and theirs. Do you know who manages their trust structure. No. Could you provide to this provide [*sic*] the documentation. It is not for me to do so, the documents are under the control of the trust structures in which I have no authority. Do you know how and when the outstanding balance will be paid. Three years have elapsed, and the full term is of 10 years. Do you control the Trust that carried out said transaction. No. I do not have decision-making authority over the Trust, nor control over it. I have no knowledge about whether the daughters had authority. In general, in Trust structures, "Trusties"[*sic*] have no authority. Payments are made by the Trust. It was understood that the payment is made to Messrs. Deutch's [*sic*] trust. How do you consider this will apply in the future for pending payments to be exclusively under judicial control as regards Deutsch's heirs. I have no legal knowledge to answer. Who was in charge of that transaction. The "Trusties" of the witness are in Zurich. Are [*sic*] structures exist since 1950 from the beginning of the partnership between both families and continue nowadays. The beneficiaries of said structures are my children and my nieces and nephews but they have no authority. In this transaction, Tata was included. As regards the airport in Perkasie, did you go with the decedent to that airport. No, he does not know who manages it. Do you know Grupo Treuco (Treuco Group). It is not a Group, it is a law firm that manages the Trust. Do you know if these are the people who manage the Deutsch family Trust. He does not know whether these are the people who manage the Deutsch family Trust. Mr. Gustavo Andrés was always very reserved as regards everything related to how he managed his properties or shareholdings, and it was never a topic of discussion between the parties. Did you

2

share any trust structure with the decedent. None. Do you know Robert Brink, whether he is married to Alison, one of the decedent's daughters. Mr. Brink participated in those decisions, not with me. There being no more questions, the testimony ends. The witness and the appearing parties add their signatures after this document is read and confirmed, before me, I attest. -----

------------------------------------------------------------------------------------------------------------

------------------------------------------------------------------------------------------------------------

THE FOREGOING IS A TRUE TRANSLATION INTO ENGLISH (IN FOLIOS NUMBERED CORRELATIVELY FROM 1 TO 3, WITH ITS BACK PAGES) OF THE SOURCE TEXT IN SPANISH THAT I HAVE HAD BEFORE ME. IN THE AUTONOMOUS CITY OF BUENOS AIRES, ON NOVEMBER 26, 2020. -----------

[The above paragraph is inserted below in Spanish for Argentine administrative purposes only.]

LO QUE ANTECEDE ES TRADUCCIÓN FIEL AL INGLÉS (EN FOLIOS NUMERADOS, CORRELATIVAMENTE, DEL 1 AL 3, CON SUS REVERSOS) DEL DOCUMENTO FUENTE EN ESPAÑOL QUE HE TENIDO ANTE MÍ. EN LA CIUDAD AUTÓNOMA DE BUENOS AIRES, A LOS 26 DÍAS DEL MES DE NOVIEMBRE DE 2020. -----------------------------------------------------------------------------

VALENTINA ACOSTA CAMBAS
TRADUCTORA PÚBLICA EN IDIOMA INGLÉS
MAT. Tº XXII  Fº 436  CABA
INSCRIPCIÓN EN CTPCBA Nº 9031
MAT. Lº I  Tº I  Fº 78  PROV. BS. AS.
INSCRIPCIÓN EN CTPIPBA SAN ISIDRO Nº SI - 0121

STA CAMBAS
EN IDIOMA INGLÉS
436  CABA
TPCBA N° 9031
PROV. BS. AS.
SAN ISIDRO N° 61 - 0121



Poder Judicial de la Nación
JUZGADO CIVIL 47

70798/2015

DEUTSCH, GUSTAVO ANDRES Y OTROS c/ VILLARRUEL
MARTHA   NOEMI-VILLARRUEL   FERNANDO   ABEL
s/SUCESION AB-INTESTATO

En Buenos Aires, a los 17 días del mes de mayo de 2017, siendo las
09:30 horas y llamadas que fueran de viva voz las partes, a la
audiencia del día de la fecha comparece en calidad de testigo la Sra.
De Narvaez Marta Isabel
, de nacionalidad argentina, estado civil casada, mayor de edad,
profesión u ocupación ama de casa, con domicilio Balnco Encalada
1061 San Isidro.  quien acredita su identidad con DNI: 17867106,
quien previo juramento de decir verdad que prestó en legal forma y
habiendo sido impuesto de las sanciones prescriptas por el art. 275 del
Código Penal en caso de falso testimonio, pasa a responder las
preguntas obrantes en el cuestionario que antecede. A la 1ra: POR
LAS GENERALES DE LA LEY: NO LE COMPRENDEN.
PREGUNTADO SOBRE EL MOTIVO POR EL CUAL FUE
CITADO A DECLARAR EL TESTIGO RESPONDE: para que diga
la testigo si conocía al causante. Contesto. Lo conocía a través de lo
que me decía mi mama Steuer Dori. Yo no tenía relación no había una
vida social solo una relación social. Lo veía en los eventos de casa tia.
Mi abuelo fundo casa tia con el papa del causante. No termino su vida
como la empezó. A donde tiene negocio casa tia. Contesto en
Argentina, Uruguay y Ecuador y también hubo en Perú y Colombia
pero luego se vendieron. Que `participación tenia el causante en
Ecuador y en Uruguay: contesto: yo no estuve en el directorio ni me
ocupe. Sería mejor que se habló con Francisco mi hermano que el
tiene una oficina que se ocuparon. Yo nunca estuve en el directorio yo
solo trabaje en compras desde el año 93 al 98 y se vendió al año

*Fecha de firma: 17/05/2017*
*Alta en sistema: 22/05/2017*
*Firmado por: HORACIO MADERNA ETCHEGARAY, JUEZ DE 1RA,INSTANCIA*




VALENTINA A(
TRADUCTORA PÚBLI
MAT. T° XXII
INSCRIPCIÓN EI
MAT. L° I  T° I  F°
INSCRIPCIÓN EN CTP/P

siguiente. Las empresas en Uruguay y ecuador están en manos de ejecutivos. En Uruguay es Tata la empresa, en todo el país de Uruguay y Ecuador y hay más o menos 100 locales en Ecuador.-No existiendo más preguntas, finaliza el acto, firmando el declarante y los comparecientes, previa lectura y ratificación, ante mí que doy fe.

Fecha de firma: 17/05/2017
Alta en sistema: 22/05/2017
Firmado por: HORACIO MADERNA ETCHEGARAY, JUEZ DE IRA,INSTANCIA

**TRADUCCIÓN PÚBLICA** -------------------------------------------------------------------------

**SWORN TRANSLATION** ---------------------------------------------------------------------------

[On the left lower corner of both pages of the document there appears an expression that reads as follows:] Date of signature: 05/17/2017 – Entered in the system: 05/22/2017 – Signed by: HORACIO MADERNA ETCHEGARAY, JUDGE OF FIRST INSTANCE[1]------------------------------------

[On the right lower corner of all pages of the document there appears a bar code with an expression underneath that reads as follows:] #27562839#179030185#20170517112308807---

[There appears a coat of arms.] ------------------------------------------------------------------------

Judiciary of the Nation-------------------------------------------------------------------------------------

Civil Court of First Instance No. 47-------------------------------------------------------------------------

70798/2015----------------------------------------------------------------------------------------------------

GUSTAVO ANDRES DEUTSCH ET AL. v. MARTA NOEMI VILLARUEL, FERNANDO ABEL VILLARRUEL, INTESTATE SUCCESSION (*DEUTSCH, GUSTAVO ANDRES Y OTROS c/ VILLARRUEL MARTHA NOEMI-VILLARRUEL FERNANDO ABEL s/ SUCESION AB-INTESTATO*) ------------------------------------

In Buenos Aires, on May 17, 2017, at 9:30 a.m., the parties having been called out loud to the hearing taking place today, personally appears as witness Ms. Marta Isabel De Narvaez, Argentinean, married, of age, profession or occupation: housewife, domiciled at Balnco [*sic*] Encalada 1061 San Isidro, who proves her identity with a National Identity Document No. 17867106, who, after having duly sworn to tell the truth and having been made aware of the sanctions prescribed by Section 275 of the Criminal Code in case of perjury, proceeds to answer the questions in the preceding questionnaire. To the 1st: THE WITNESS IS QUESTIONED ON WHETHER ANY IMPEDIMENTS PRESCRIBED BY LAW APPLY: NONE. WHEN ASKED ABOUT THE REASON WHY SHE WAS SUMMONED TO TESTIFY, THE WITNESS REPLIES: so that the witness states whether she knew the decedent: she answered. I knew him through what my mother, Dori Steuer, told me. I had no relationship, there was no social life, only a social relationship. I saw him at Casa Tia events. My grandfather founded Casa Tia with the decedent's father. He did not end his life the way he started it. Where does Casa Tia have business. She replied, in Argentina, Uruguay and Ecuador, and also in Peru and Colombia, but these were later sold. What was the decedent's participation in Ecuador and Uruguay: she answered: I was not part of the board of directors nor was I in charge. It would be better that it was talked [*sic*] with my brother Francisco, since he has an office that was in charge. I was never in the board of directors, I only worked in the purchasing department since 1993 to 1998, and it was sold the following year.

---

[1] Translator's Note: The wording of the source document is quite poor. I have made a balance between correcting the errors that can be corrected due to their nature and leaving the ones that cannot, marked by "[*sic*]", in order for the translation to be true to the source text.--------------------------------------------

The businesses in Uruguay and Ecuador are in the hands of executives. In Uruguay, the company is Tata, in all of Uruguay and Ecuador, and there are more or less 100 stores in Ecuador. There being no more questions, the testimony ends. The witness and the appearing parties add their signatures after this document is read and confirmed, before me, I attest. ---------------------------

-----------------------------------------------------------------------------------------------------------------

-----------------------------------------------------------------------------------------------------------------

THE FOREGOING IS A TRUE TRANSLATION INTO ENGLISH (IN FOLIOS NUMBERED CORRELATIVELY FROM 1 TO 2, WITH ITS BACK PAGES) OF THE SOURCE TEXT IN SPANISH THAT I HAVE HAD BEFORE ME. IN THE AUTONOMOUS CITY OF BUENOS AIRES, ON NOVEMBER 26, 2020. ----------

[The above paragraph is inserted below in Spanish for Argentine administrative purposes only.]

LO QUE ANTECEDE ES TRADUCCIÓN FIEL AL INGLÉS (EN FOLIOS NUMERADOS, CORRELATIVAMENTE, DEL 1 AL 2, CON SUS REVERSOS) DEL DOCUMENTO FUENTE EN ESPAÑOL QUE HE TENIDO ANTE MÍ. EN LA CIUDAD AUTÓNOMA DE BUENOS AIRES, A LOS 26 DÍAS DEL MES DE NOVIEMBRE DE 2020. ------------------------------------------------------------------------------------

VALENTINA ACOSTA CAMBAS
TRADUCTORA PÚBLICA EN IDIOMA INGLÉS
MAT. T° XXII  F° 436  CABA
INSCRIPCIÓN EN CTPCBA N° 9031
MAT. L° I  T° I  F° 76  PROV. BS. AS.
INSCRIPCIÓN EN CTPIPBA SAN ISIDRO N° SI - 0121

2

# Exhibit "B"



Poder Judicial de la Nación

JUZGADO CIVIL 47

70798/2015

DEUTSCH, GUSTAVO ANDRES Y OTRO s/SUCESION AB-
INTESTATO

Buenos Aires,        de febrero de 2017.- DZ

Por recibidos.-

Agréguese la partida de nacimiento acompañada junto
con el escrito de fs. 422.-

**AUTOS Y VISTOS:**

Para dictar declaratoria de herederos, de    cuyas
constancias;

**RESULTA:**

Con la partida de fs. 54 se acredita el  fallecimiento del
causante **GUSTAVO ANDRES DEUTSCH**, ocurrido el 14 de
Septiembre de 2014.-

Con la partida obrante a de fs. 43  de los autos
caratulados    "  VILLARRUEL  GRACIELA  JOSEFINA"  S/
SUCESION AB INTESTATO, EXPEDIENTE Nº 86745/2015, se
acredita el fallecimiento de **GRACIELA  JOSEFINA
VILLARRUEL**, cónyuge del causante, ocurrido el día 14 de
Septiembre de 2014.-

De la unión del  causante con OLGA KOZAK, nacieron
sus    hijos   **JULIA ANDREA DEUTSCH,  FREDERIK
LAWRENCE DEUTSCH, CATALINA MICAELA DEUTSCH** y
**ALLISON KAYE DEUTSCH**, conforme   resulta de las copias
certificadas de las partidas obrantes a fs. 29/35, 36/44, 24/27 de los
autos caratulados "DEUTSCH, GUSTAVO ANDRES s/AUSENCIA CON
PRESUNCION DE FALLECIMIENTO, EXPEDIENTE Nº 25.749/2015",  y de
la obrante a fs. 420 de las presentes actuaciones.-

*Fecha de firma: 23/02/2017*
*Firmado por: HORACIO MADERNA ETCHEGARAY, JUEZ DE 1RA,INSTANCIA*



#27562839#172600080#2017022311334753

VALENTINA A(
TRADUCTORA PÚBL
MAT. Tº XXII
INSCRIPCIÓN E
MAT. Lº I Tº I Fº
INSCRIPCIÓN EN CTPIP

De la unión del causante con  RITA KARINA ROSA CAPORALE  nació su hijo **GUSTAVO JESHUA CAPORALE DEUTSCH** conforme resulta de la partida de nacimiento obrante a fs. 295/296 de los autos caratulados "DEUTSCH, GUSTAVO ANDRES   s/AUSENCIA   CON   PRESUNCION   DE FALLECIMIENTO, EXPEDIENTE Nº 25.749/2015".-

Con los diarios y recibos de fs. 87 y de fs. 400/401  se justifica el cumplimiento de las publicaciones de los  edictos de ley, acerca de cuyo resultado negativo se  certificó a fs. 396.

Por ello, conformidad precedentemente  expresada por el Ministerio Público Fiscal, y de  acuerdo con lo establecido por los arts. 700 y 702 del   Código Procesal y 3565 del Código Civil, **RESUELVO**:  Declarar en cuanto ha lugar por derecho, que por fallecimiento de **GUSTAVO ANDRES DEUTSCH** le suceden en carácter de herederos   universales sus hijos **JULIA ANDREA DEUTSCH, FREDERIK LAWRENCE DEUTSCH, CATALINA MICAELA DEUTSCH, ALLISON KAYE DEUTSCH,** y **GUSTAVO JESHUA CAPORALE DEUTSCH.-**

Cese la intervención del Ministerio  Público Fiscal. REGISTRESE.-

*Fecha de firma: 23/02/2017*
*Firmado por: HORACIO MADERNA ETCHEGARAY, JUEZ DE 1RA,INSTANCIA*

#27562839#172600080#20170223113347533

<u>**TRADUCCIÓN PÚBLICA**</u> ------------------------------------------------------------------------------

<u>**SWORN TRANSLATION**</u> --------------------------------------------------------------------------------

[On the left lower corner of both pages of the document there appears an expression that reads as follows:] Date of signature: 02/23/2017 – Signed by: HORACIO MADERNA ETCHEGARAY, JUDGE OF FIRST INSTANCE -----------------------------------------------------------------

[On the right lower corner of both pages of the document there appears a bar code with an expression underneath that reads as follows:] #27562839#172600080#20170223113347533 ---

[There appears a coat of arms.] ------------------------------------------------------------------------

Judiciary of the Nation--------------------------------------------------------------------------------------

Civil Court of First Instance No. 47------------------------------------------------------------------------

70798/2015-----------------------------------------------------------------------------------------------------

GUSTAVO ANDRES DEUTSCH ET AL., INTESTATE SUCCESSION (*DEUTSCH, GUSTAVO ANDRES Y OTRO s/ SUCESION AB-INTESTATO*) -------------------------------------------------------------------

Buenos Aires, February, 2017.- *DZ*--------------------------------------------------------------------------

Received. -------------------------------------------------------------------------------------------------------

The birth certificate attached to brief in folio 422 is included. --------------------------------------

<u>**COURT RECORD AND NOTIFICATIONS:**</u> ----------------------------------------------------------------

For the ruling declaring who the rightful heirs are, from the documents-------------------------------

<u>**THE FOLLOWING IS CONCLUDED**</u>: --------------------------------------------------------------------

With the certificate included in folio 54, the death of the decedent **GUSTAVO ANDRES DEUTSCH**, occurred on September 14, 2014, is evidenced. ------------------------------------------------------

With the certificate included in folio 43 in the record of proceedings captioned "GRACIELA JOSEFINA VILLARUEL, INTESTATE SUCCESSION (*VILLARUEL, GRACIELA JOSEFINA S/ SUCESION AB INTESTATO*) RECORD OF PROCEEDINGS No. 86745/2015", the death of **GRACIELA JOSEFINA VILLARUEL**, spouse of the decedent, occurred on September 14, 2014, is evidenced. -------------

From the union of the decedent with OLGA KOZAK, the children **JULIA ANDREA DEUTSCH, FREDERIK LAWRENCE DEUTSCH, CATALINA MICAELA DEUTSCH** and **ALLISON KAYE DEUTSCH** were born, as it is evidenced with the certified copies of the certificates included in folios 29/35, 36/44, 24/27 of the record of proceedings captioned "GUSTAVO ANDRES DEUTSCH, PRESUMPTION OF DEATH BASED ON ABSENCE (*DEUTSCH, GUSTAVO ANDRES s/ AUSENCIA CON PRESUNCION DE FALLECIMIENTO*), RECORD OF PROCEEDINGS No. 25,749/2015" and with the certified copy included in folio 420 of this record of proceedings. -----------------------------------

From the union of the decedent with RITA KARINA ROSA CAPORALE, their son **GUSTAVO JESHUA CAPORALE DEUTSCH** was born, as it is evidenced with the birth certificate included in folios 295/296 of the record of proceedings captioned "GUSTAVO ANDRES DEUTSCH, PRESUMPTION

1

OF DEATH BASED ON ABSENCE (*DEUTSCH, GUSTAVO ANDRES s/ AUSENCIA CON PRESUNCION DE FALLECIMIENTO*), RECORD OF PROCEEDINGS No. 25,749/2015." -----------------------------------------

With the newspapers and receipts included in folios 87 and 400/401, compliance with the publications of legal notices is evidenced, the negative result of which was evidenced in folio 396. -----------------------------------------------------------------------------------------------------------

Now therefore, upon agreement of the Attorney General's Office, and pursuant to Sections 700 and 702 of the Procedural Code, and Section 3565 of the Civil Code, **I HEREBY ORDER, ADJUDGE AND DECREE THAT**: since according to law it is appropriate, and given the death of **GUSTAVO ANDRES DEUTSCH**, his children **JULIA ANDREA DEUTSCH, FREDERIK LAWRENCE DEUTSCH, CATALINA MICAELA DEUTSCH, ALLISON KAYE DEUTSCH**, and **GUSTAVO JESHUA CAPORALE DEUTSCH** are hereby declared the decedent's universal heirs and shall therefore succeed him. The intervention of the Attorney General's Office ceases. ----------------------------------------------------

This ruling is recorded.----------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------------------------

THE FOREGOING IS A TRUE TRANSLATION INTO ENGLISH (IN FOLIOS NUMBERED CORRELATIVELY FROM 1 TO 2, WITH ITS BACK PAGES) OF THE SOURCE TEXT IN SPANISH THAT I HAVE HAD BEFORE ME. IN THE AUTONOMOUS CITY OF BUENOS AIRES, ON NOVEMBER 26, 2020. -----------

[The above paragraph is inserted below in Spanish for Argentine administrative purposes only.]

LO QUE ANTECEDE ES TRADUCCIÓN FIEL AL INGLÉS (EN FOLIOS NUMERADOS, CORRELATIVAMENTE, DEL 1 AL 2, CON SUS REVERSOS) DEL DOCUMENTO FUENTE EN ESPAÑOL QUE HE TENIDO ANTE MÍ. EN LA CIUDAD AUTÓNOMA DE BUENOS AIRES, A LOS 26 DÍAS DEL MES DE NOVIEMBRE DE 2020. ----------------------------------------------------------------------------------

VALENTINA ACOSTA CAMBAS
TRADUCTORA PÚBLICA EN IDIOMA INGLÉS
MAT. T° XXII  F° 436  CABA
INSCRIPCIÓN EN CTPCBA N° 9031
MAT. L° I  T° I  F° 76  PROV. BS. AS.
INSCRIPCIÓN EN CTPIPBA SAN ISIDRO N° SI-0121

2

# Exhibit "2"

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
_____ District of _____

| | |
|---|---|
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) |
| | ) |
| _____ | ) |
| *Defendant* | ) |

Civil Action No.

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: _____

*(Name of person to whom this subpoena is directed)*

❏ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
| | |

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

In Re Application Of

JUAN MARIA ALTGELT                          Case No.

                           Applicant

pursuant to 28 U.S.C. § 1782
For Judicial Assistance in Obtaining
Evidence For Use in Foreign and International
Proceedings.

## SUBPOENA TO FREDERICK LAWRENCE DEUTSCH

## SCHEDULE 1

## DEFINITIONS

As used in this request, the following words shall have the following meanings:

1.     "You" or "Your" means the person to whom this subpoena is directed, as well as any of your agents, Corporate or Trust Structures, attorneys, employees, accountants, or consultants, acting for or on your behalf with respect to the Transaction, as defined herein.

2.     "Applicant" means Juan Maria Altgelt.

3.     "Mrs. De Narvaez" means Maria Isabel de Narvaez, as well as any of her agents, Corporate or Trust Structures, attorneys, employees, accountants, or consultants, acting for or on her behalf with respect to the Transaction, as defined herein.

4.     "De Narvaez Family" means Francisco De Narvaez, Juana De Narvaez, and Maria Isabel de Narvaez (together with their descendants), as well as any of their agents, Corporate or Trust Structures, attorneys, employees, accountants, or consultants, acting for or on their behalf with respect to the Transaction, as defined herein.

5.     "Treuco" means the Swiss wealth management firm, as well as any of its directors, officers, members, partners, predecessors, successors, agents, Corporate or Trust Structures,

attorneys, employees, or consultants, acting for or on behalf of Ta-Ta S.A, Tiendas Industriales Asociadas (Tía) S.A., and the De Narvaez Family.

6.      "Tía" means the South American multinational group of companies dedicated to the retail business, as well as any of its directors, officers, members, partners, predecessors, successors, agents, Corporate or Trust Structures, attorneys, employees, or consultants, acting for or on behalf of.

7.      "Tia Ecuador" means Tiendas Industriales Asociadas (Tía) S.A., as well as any of its directors, officers, members, partners, predecessors, successors, agents, Corporate or Trust Structures, attorneys, employees, or consultants, acting for or on behalf of Tiendas Industriales Asociadas (Tía) S.A.

8.      "Ta-Ta Uruguay" means Ta-Ta S.A., as well as any of its directors, officers, members, partners, predecessors, successors, agents, Corporate or Trust Structures, attorneys, employees, or consultants, acting for or on behalf of Ta-Ta S.A.

9.      "Transaction" means the sale of your share ownership in Tía Ecuador and Ta-Ta Uruguay to the De Narvaez Family (either directly or indirectly) in 2014.

10.     "Corporate or Trust Structures" means any and all corporate or trust structures, arrangements, agreements, deeds, or any other instruments which directly or indirectly may have been a party to the Transaction, or may have been used to directly or indirectly hold ownership over the Acquired Shares, either before, during, or after the Transaction, including but not limited to Grant Invest PTE LTD (Limited Private Company – Singapore), Innoparticipations LP (Body Corporate – New Zealand), Innovent Investment LP (Limited Partnerhip – Scotland UK), Innovent Investment SA (Aktiengesellschaft - Switzerland), Tienda Investment PTE LTD (Excempt Private Company Limited By Shares - Singapore), Innovent Services Limited (Limited Company – New Zealand), Dulas Holding SA (St. Vincent & Granadines), Innovent Partner LP (Private Limited Company – Scotland UK), Chenin Investment PTE LTD (Private Company Limited By Shares - Singapore), EEMO Investment Corp (St. Vincent & Granadines), Epiro Property SA (Belize), Namika Commercial Corp (Belize), Myana Business Limited (St. Vincent & Granadines), Sulma Trust, Sulma I Trust, Sulma II Trust, Sulma III Trust, United Textile Works LLC, Enterprises

Textiles Reunies Societe Anonyme, VEREINIGTE TEXTILWERKE AKTIENGESELLSCHAF, Pierron Properties, Grant Investment Properties LTD, Dribel SA, Inmovera, or Iru ANY SRL.

11.     "Acquired Shares" means the shares Tía Ecuador and Ta-Ta Uruguay sold (directly or indirectly) to the De Narvaez Family by way of the Transaction.

12.     The term "communication(s)" means any oral, written or electronically stored information which constitutes a transmission of information, including, but not limited to, correspondence, e-mail (sent and received), conversations, dialogue, meetings, discussions, interviews, telephone calls, voice-messages, consultations, agreements, understandings between or among two or more persons, telegrams, telecopies, telexes, seminars, conferences, messages, notes or memoranda.

13.     "Document" shall have the same meaning and scope as "documents or electronically stored information" within the meaning of Federal Rule of Civil Procedure 34(a)(1)(A).  The term "document" is intended to include "communications."

14.     The terms "and" and "or" shall be construed conjunctively or disjunctively as is necessary to make the request for production inclusive rather than exclusive.

15.     The term "any" means "all" and vice versa.

16.     The term "including" means including but not limited to.

17.     The singular shall be construed to include the plural, and vice versa, to make the Request inclusive rather than exclusive.

18.     "Person" means natural person(s), corporation(s), association(s), partnership(s), sole proprietorship(s) or public entity(ies).

19.     "Related to" or "relating to" means constitute, regarding, refer to, reflect, mention, evidence, concern, pertain to, arise out of, summarize, analyze, or be logically or factually connected in any way with the matter discussed.

20.     "Relevant Period" refers to the period of time from July 1, 2014 to the date of Your response to this Request. **Unless otherwise stated, all Requests refer only to the Relevant Period.**

21.     "Source of Funds" shall mean the exact account that initiates a payment, including the name of the account holder, account number, bank name, and bank address or routing number.

22.     "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or with an interest in an asset, including payment, gift, grant, alienation, bargain, sale, conveyance, lease, release, creation of lien or encumbrance, assignment, retention of title as a security interest, consignment, and bailments of any kind.

## **GENERAL PROVISIONS**

1.      Any document in Your possession or the possession of any individual or corporation over which You have custody or control, including, but not limited to, Your predecessor in interest, agents, Corporate or Trust Structures, corporations, employees and, unless privileged, attorneys is deemed to be within Your possession or control. You have the affirmative duty to contact any third party, including the foregoing, that is within Your custody or control if such third party has documentation responsive to this Subpoena.

The documents produced pursuant to this request for production of documents are to be segregated and identified by the number of the request to which the documents are responsive.

In the event You claim that any document requested is unavailable, lost, misplaced, or destroyed, state the following:

        a. the date You believe such document became unavailable, lost, misplaced, or destroyed; and

        b. the reason why such document became misplaced, lost, or destroyed.

In the event that You seek to withhold any document on the basis that it is covered by privilege, please provide the following information:

        a. The name of each author, writer, sender, or initiator of such document or thing, if any;

        b. The name of each recipient, addressee or party for whom such document or thing was intended, if any;

        c. The date of such document, if any, or an estimate thereof so indicated if no date appears on the document;

        d. The general subject matter as described in such document, or, if no such description appears, then such other description sufficient to identify said document; and

        e. The claimed grounds for withholding the document, including, but not limited to the nature of any claimed privilege and grounds in support thereof.

For each request, or part thereof, which is not fully responded to pursuant to a privilege, the nature of the privilege and grounds in support thereof should be fully stated, and that portion of the document not claimed to be privileged shall be produced.

If production of documents or other items required by this Subpoena would be, in whole or in part, unduly burdensome, or if the response to an individual request for production may be

aided by clarification of the request, contact the issuer of this Subpoena, to discuss possible amendments or modifications of the Request within five (5) days of receipt of same.

Documents maintained in electronic form <u>must be produced in their native electronic form with all metadata intact</u>. Data must be produced in the data format in which it is typically used and maintained. For electronic mail systems using Microsoft Outlook or LotusNotes, provide all responsive emails and, if applicable, email attachments and any related documents, in their native file format (i.e., .pst for outlook personal folder, .nsf for LotusNotes). For all other email systems provide all responsive emails and if applicable, email attachments and any related documents in TIFF format.

a. To the extent any electronically stored information, if produced in its native format, would be difficult or impossible to review because it would require proprietary or legacy software, said electronically stored information should be provided in Image (near-paper) format (i.e., .TIFF, or .PDF files) with a corresponding load file utilizing valid field delimiters and text qualifiers containing metadata and optical character recognition (OCR) extracted text for said electronically stored information named with the document identification (DocID) of its corresponding file.

b. To the extent any electronically stored information is a password protected native file, the password for the native file should be provided as metadata in a text file named with the document identification (DocID) of the corresponding password protected native file.

To the extent that no single document exists or is in your possession, custody or control that contains all the information sought in any particular request, you are to provide such other documents in your possession, custody or control that are sufficient to show, compute, compile, or explain all the information sought in the request or as much information as is available.

These requests shall be deemed continuing so as to require you to reasonably supplement your responsive production if you gain knowledge that your response was incomplete.

## DOCUMENTS REQUESTED

1.      All Documents pertaining to the Transaction (e.g., purchase agreements, seller financing agreements, guarantee or security agreements, etc.).

2.      All corporate and trust Documents referencing the Transaction and the parties and ultimate beneficiaries thereof, including but not limited to, any member of the De Narvaez family (e.g., certificates of incorporation, trust deeds, legal opinions, etc.).

3.      All communications between you, on the one hand, and any member of the De Narvaez Family, on the other hand, regarding the Transaction and Acquired Shares.

4.      All communications between you, on the one hand, and Treuco, on the other hand, regarding the Transaction and Acquired Shares.

5.      All Documents identifying (i) the names of any shareholders in Tia Ecuador and Ta-Ta Uruguay, including but not limited to Mrs. De Narvaez, any trust for which she or her descendants is a beneficiary, or any entity for which she is a manager, owner, officer, or director, (ii) the shareholders' respective ownership percentages, and (iii) the dates on which they acquired each portion of their ownership interests.

6.      All Documents regarding the Acquired Shares' purchase price (e.g., identification of payors and payees, participating financial institutions, payment instructions, receipts, wire transfers, etc.).

7.      All Documents identifying the Source of Funds for payment of the purchase price for the Acquired Shares.

8.      All Documents regarding the distribution of dividends to shareholders of Tia Ecuador and Ta-Ta Uruguay, and their parent companies / Corporate or Trust Structures.

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

_____ District of _____

| | | |
|---|---|---|
| _____ | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: _____

*(Name of person to whom this subpoena is directed)*

❏ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
| | |

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| | | |
|---|---|---|
| *CLERK OF COURT* | | |
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In Re Application Of<br><br>JUAN MARIA ALTGELT<br><br>                 Applicant<br><br>pursuant to 28 U.S.C. § 1782<br>For Judicial Assistance in Obtaining<br>Evidence For Use in Foreign and International<br>Proceedings. | Case No. |

**SUBPOENA TO JULIA ANDREA BRINK**

**SCHEDULE 1**

**DEFINITIONS**

As used in this request, the following words shall have the following meanings:

1.      "You" or "Your" means the person to whom this subpoena is directed, as well as any of your agents, Corporate or Trust Structures, attorneys, employees, accountants, or consultants, acting for or on your behalf with respect to the Transaction, as defined herein.

2.      "Applicant" means Juan Maria Altgelt.

3.      "Mrs. De Narvaez" means Maria Isabel de Narvaez, as well as any of her agents, Corporate or Trust Structures, attorneys, employees, accountants, or consultants, acting for or on her behalf with respect to the Transaction, as defined herein.

4.      "De Narvaez Family" means Francisco De Narvaez, Juana De Narvaez, and Maria Isabel de Narvaez (together with their descendants), as well as any of their agents, Corporate or Trust Structures, attorneys, employees, accountants, or consultants, acting for or on their behalf with respect to the Transaction, as defined herein.

5.      "Treuco" means the Swiss wealth management firm, as well as any of its directors, officers, members, partners, predecessors, successors, agents, Corporate or Trust Structures,

attorneys, employees, or consultants, acting for or on behalf of Ta-Ta S.A, Tiendas Industriales Asociadas (Tía) S.A., and the De Narvaez Family.

6.      "Tía" means the South American multinational group of companies dedicated to the retail business, as well as any of its directors, officers, members, partners, predecessors, successors, agents, Corporate or Trust Structures, attorneys, employees, or consultants, acting for or on behalf of.

7.      "Tia Ecuador" means Tiendas Industriales Asociadas (Tía) S.A., as well as any of its directors, officers, members, partners, predecessors, successors, agents, Corporate or Trust Structures, attorneys, employees, or consultants, acting for or on behalf of Tiendas Industriales Asociadas (Tía) S.A.

8.      "Ta-Ta Uruguay" means Ta-Ta S.A., as well as any of its directors, officers, members, partners, predecessors, successors, agents, Corporate or Trust Structures, attorneys, employees, or consultants, acting for or on behalf of Ta-Ta S.A.

9.      "Transaction" means the sale of your share ownership in Tía Ecuador and Ta-Ta Uruguay to the De Narvaez Family (either directly or indirectly) in 2014.

10.     "Corporate or Trust Structures" means any and all corporate or trust structures, arrangements, agreements, deeds, or any other instruments which directly or indirectly may have been a party to the Transaction, or may have been used to directly or indirectly hold ownership over the Acquired Shares, either before, during, or after the Transaction, including but not limited to Grant Invest PTE LTD (Limited Private Company – Singapore), Innoparticipations LP (Body Corporate – New Zealand), Innovent Investment LP (Limited Partnerhip – Scotland UK), Innovent Investment SA (Aktiengesellschaft - Switzerland), Tienda Investment PTE LTD (Excempt Private Company Limited By Shares - Singapore), Innovent Services Limited (Limited Company – New Zealand), Dulas Holding SA (St. Vincent & Granadines), Innovent Partner LP (Private Limited Company – Scotland UK), Chenin Investment PTE LTD (Private Company Limited By Shares - Singapore), EEMO Investment Corp (St. Vincent & Granadines), Epiro Property SA (Belize), Namika Commercial Corp (Belize), Myana Business Limited (St. Vincent & Granadines), Sulma Trust, Sulma I Trust, Sulma II Trust, Sulma III Trust, United Textile Works LLC, Enterprises

2

Textiles Reunies Societe Anonyme, VEREINIGTE TEXTILWERKE AKTIENGESELLSCHAF,
Pierron Properties, Grant Investment Properties LTD, Dribel SA, Inmovera, or Iru ANY SRL.

11.     "Acquired Shares" means the shares Tía Ecuador and Ta-Ta Uruguay sold (directly
or indirectly) to the De Narvaez Family by way of the Transaction.

12.     The term "communication(s)" means any oral, written or electronically stored
information which constitutes a transmission of information, including, but not limited to,
correspondence, e-mail (sent and received), conversations, dialogue, meetings, discussions,
interviews, telephone calls, voice-messages, consultations, agreements, understandings between
or among two or more persons, telegrams, telecopies, telexes, seminars, conferences, messages,
notes or memoranda.

13.     "Document" shall have the same meaning and scope as "documents or
electronically stored information" within the meaning of Federal Rule of Civil Procedure
34(a)(1)(A).  The term "document" is intended to include "communications."

14.     The terms "and" and "or" shall be construed conjunctively or disjunctively as is
necessary to make the request for production inclusive rather than exclusive.

15.     The term "any" means "all" and vice versa.

16.     The term "including" means including but not limited to.

17.     The singular shall be construed to include the plural, and vice versa, to make the
Request inclusive rather than exclusive.

18.     "Person" means natural person(s), corporation(s), association(s), partnership(s),
sole proprietorship(s) or public entity(ies).

19.     "Related to" or "relating to" means constitute, regarding, refer to, reflect, mention,
evidence, concern, pertain to, arise out of, summarize, analyze, or be logically or factually
connected in any way with the matter discussed.

20.     "Relevant Period" refers to the period of time from July 1, 2014 to the date of Your
response to this Request. **Unless otherwise stated, all Requests refer only to the Relevant
Period.**

21.     "Source of Funds" shall mean the exact account that initiates a payment, including the name of the account holder, account number, bank name, and bank address or routing number.

22.     "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or with an interest in an asset, including payment, gift, grant, alienation, bargain, sale, conveyance, lease, release, creation of lien or encumbrance, assignment, retention of title as a security interest, consignment, and bailments of any kind.

## **GENERAL PROVISIONS**

1.      Any document in Your possession or the possession of any individual or corporation over which You have custody or control, including, but not limited to, Your predecessor in interest, agents, Corporate or Trust Structures, corporations, employees and, unless privileged, attorneys is deemed to be within Your possession or control. You have the affirmative duty to contact any third party, including the foregoing, that is within Your custody or control if such third party has documentation responsive to this Subpoena.

The documents produced pursuant to this request for production of documents are to be segregated and identified by the number of the request to which the documents are responsive.

In the event You claim that any document requested is unavailable, lost, misplaced, or destroyed, state the following:

      a. the date You believe such document became unavailable, lost, misplaced, or destroyed; and

      b. the reason why such document became misplaced, lost, or destroyed.

In the event that You seek to withhold any document on the basis that it is covered by privilege, please provide the following information:

      a. The name of each author, writer, sender, or initiator of such document or thing, if any;

      b. The name of each recipient, addressee or party for whom such document or thing was intended, if any;

      c. The date of such document, if any, or an estimate thereof so indicated if no date appears on the document;

      d. The general subject matter as described in such document, or, if no such description appears, then such other description sufficient to identify said document; and

      e. The claimed grounds for withholding the document, including, but not limited to the nature of any claimed privilege and grounds in support thereof.

For each request, or part thereof, which is not fully responded to pursuant to a privilege, the nature of the privilege and grounds in support thereof should be fully stated, and that portion of the document not claimed to be privileged shall be produced.

If production of documents or other items required by this Subpoena would be, in whole or in part, unduly burdensome, or if the response to an individual request for production may be

aided by clarification of the request, contact the issuer of this Subpoena, to discuss possible amendments or modifications of the Request within five (5) days of receipt of same.

Documents maintained in electronic form <u>must be produced in their native electronic form with all metadata intact</u>. Data must be produced in the data format in which it is typically used and maintained. For electronic mail systems using Microsoft Outlook or LotusNotes, provide all responsive emails and, if applicable, email attachments and any related documents, in their native file format (i.e., .pst for outlook personal folder, .nsf for LotusNotes). For all other email systems provide all responsive emails and if applicable, email attachments and any related documents in TIFF format.

a. To the extent any electronically stored information, if produced in its native format, would be difficult or impossible to review because it would require proprietary or legacy software, said electronically stored information should be provided in Image (near-paper) format (i.e., .TIFF, or .PDF files) with a corresponding load file utilizing valid field delimiters and text qualifiers containing metadata and optical character recognition (OCR) extracted text for said electronically stored information named with the document identification (DocID) of its corresponding file.

b. To the extent any electronically stored information is a password protected native file, the password for the native file should be provided as metadata in a text file named with the document identification (DocID) of the corresponding password protected native file.

To the extent that no single document exists or is in your possession, custody or control that contains all the information sought in any particular request, you are to provide such other documents in your possession, custody or control that are sufficient to show, compute, compile, or explain all the information sought in the request or as much information as is available.

These requests shall be deemed continuing so as to require you to reasonably supplement your responsive production if you gain knowledge that your response was incomplete.

## **DOCUMENTS REQUESTED**

1.      All Documents pertaining to the Transaction (e.g., purchase agreements, seller financing agreements, guarantee or security agreements, etc.).

2.      All corporate and trust Documents referencing the Transaction and the parties and ultimate beneficiaries thereof, including but not limited to, any member of the De Narvaez family (e.g., certificates of incorporation, trust deeds, legal opinions, etc.).

3.      All communications between you, on the one hand, and any member of the De Narvaez Family, on the other hand, regarding the Transaction and Acquired Shares.

4.      All communications between you, on the one hand, and Treuco, on the other hand, regarding the Transaction and Acquired Shares.

5.      All Documents identifying (i) the names of any shareholders in Tia Ecuador and Ta-Ta Uruguay, including but not limited to Mrs. De Narvaez, any trust for which she or her descendants is a beneficiary, or any entity for which she is a manager, owner, officer, or director, (ii) the shareholders' respective ownership percentages, and (iii) the dates on which they acquired each portion of their ownership interests.

6.      All Documents regarding the Acquired Shares' purchase price (e.g., identification of payors and payees, participating financial institutions, payment instructions, receipts, wire transfers, etc.).

7.      All Documents identifying the Source of Funds for payment of the purchase price for the Acquired Shares.

8.      All Documents regarding the distribution of dividends to shareholders of Tia Ecuador and Ta-Ta Uruguay, and their parent companies / Corporate or Trust Structures.

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
_____ District of _____

| | |
|---|---|
| _____ <br> *Plaintiff* <br> v. <br> _____ <br> *Defendant* | ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No.

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: _____

*(Name of person to whom this subpoena is directed)*

❏ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
| | |

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In Re Application Of

JUAN MARIA ALTGELT                              Case No.

                              Applicant

pursuant to 28 U.S.C. § 1782
For Judicial Assistance in Obtaining
Evidence For Use in Foreign and International
Proceedings.

## SUBPOENA TO ALLISON KAYE DEUTSCH

## SCHEDULE 1

## DEFINITIONS

As used in this request, the following words shall have the following meanings:

1.      "You" or "Your" means the person to whom this subpoena is directed, as well as any of your agents, Corporate or Trust Structures, attorneys, employees, accountants, or consultants, acting for or on your behalf with respect to the Transaction, as defined herein.

2.      "Applicant" means Juan Maria Altgelt.

3.      "Mrs. De Narvaez" means Maria Isabel de Narvaez, as well as any of her agents, Corporate or Trust Structures, attorneys, employees, accountants, or consultants, acting for or on her behalf with respect to the Transaction, as defined herein.

4.      "De Narvaez Family" means Francisco De Narvaez, Juana De Narvaez, and Maria Isabel de Narvaez (together with their descendants), as well as any of their agents, Corporate or Trust Structures, attorneys, employees, accountants, or consultants, acting for or on their behalf with respect to the Transaction, as defined herein.

5.      "Treuco" means the Swiss wealth management firm, as well as any of its directors, officers, members, partners, predecessors, successors, agents, Corporate or Trust Structures,

attorneys, employees, or consultants, acting for or on behalf of Ta-Ta S.A, Tiendas Industriales Asociadas (Tía) S.A., and the De Narvaez Family.

6.      "Tía" means the South American multinational group of companies dedicated to the retail business, as well as any of its directors, officers, members, partners, predecessors, successors, agents, Corporate or Trust Structures, attorneys, employees, or consultants, acting for or on behalf of.

7.      "Tia Ecuador" means Tiendas Industriales Asociadas (Tía) S.A., as well as any of its directors, officers, members, partners, predecessors, successors, agents, Corporate or Trust Structures, attorneys, employees, or consultants, acting for or on behalf of Tiendas Industriales Asociadas (Tía) S.A.

8.      "Ta-Ta Uruguay" means Ta-Ta S.A., as well as any of its directors, officers, members, partners, predecessors, successors, agents, Corporate or Trust Structures, attorneys, employees, or consultants, acting for or on behalf of Ta-Ta S.A.

9.      "Transaction" means the sale of your share ownership in Tía Ecuador and Ta-Ta Uruguay to the De Narvaez Family (either directly or indirectly) in 2014.

10.     "Corporate or Trust Structures" means any and all corporate or trust structures, arrangements, agreements, deeds, or any other instruments which directly or indirectly may have been a party to the Transaction, or may have been used to directly or indirectly hold ownership over the Acquired Shares, either before, during, or after the Transaction, including but not limited to Grant Invest PTE LTD (Limited Private Company – Singapore), Innoparticipations LP (Body Corporate – New Zealand), Innovent Investment LP (Limited Partnerhip – Scotland UK), Innovent Investment SA (Aktiengesellschaft - Switzerland), Tienda Investment PTE LTD (Excempt Private Company Limited By Shares - Singapore), Innovent Services Limited (Limited Company – New Zealand), Dulas Holding SA (St. Vincent & Granadines), Innovent Partner LP (Private Limited Company – Scotland UK), Chenin Investment PTE LTD (Private Company Limited By Shares - Singapore), EEMO Investment Corp (St. Vincent & Granadines), Epiro Property SA (Belize), Namika Commercial Corp (Belize), Myana Business Limited (St. Vincent & Granadines), Sulma Trust, Sulma I Trust, Sulma II Trust, Sulma III Trust, United Textile Works LLC, Enterprises

Textiles Reunies Societe Anonyme, VEREINIGTE TEXTILWERKE AKTIENGESELLSCHAF, Pierron Properties, Grant Investment Properties LTD, Dribel SA, Inmovera, or Iru ANY SRL.

11.     "Acquired Shares" means the shares Tía Ecuador and Ta-Ta Uruguay sold (directly or indirectly) to the De Narvaez Family by way of the Transaction.

12.     The term "communication(s)" means any oral, written or electronically stored information which constitutes a transmission of information, including, but not limited to, correspondence, e-mail (sent and received), conversations, dialogue, meetings, discussions, interviews, telephone calls, voice-messages, consultations, agreements, understandings between or among two or more persons, telegrams, telecopies, telexes, seminars, conferences, messages, notes or memoranda.

13.     "Document" shall have the same meaning and scope as "documents or electronically stored information" within the meaning of Federal Rule of Civil Procedure 34(a)(1)(A).  The term "document" is intended to include "communications."

14.     The terms "and" and "or" shall be construed conjunctively or disjunctively as is necessary to make the request for production inclusive rather than exclusive.

15.     The term "any" means "all" and vice versa.

16.     The term "including" means including but not limited to.

17.     The singular shall be construed to include the plural, and vice versa, to make the Request inclusive rather than exclusive.

18.     "Person" means natural person(s), corporation(s), association(s), partnership(s), sole proprietorship(s) or public entity(ies).

19.     "Related to" or "relating to" means constitute, regarding, refer to, reflect, mention, evidence, concern, pertain to, arise out of, summarize, analyze, or be logically or factually connected in any way with the matter discussed.

20.     "Relevant Period" refers to the period of time from July 1, 2014 to the date of Your response to this Request. **Unless otherwise stated, all Requests refer only to the Relevant Period.**

21.     "Source of Funds" shall mean the exact account that initiates a payment, including the name of the account holder, account number, bank name, and bank address or routing number.

22.     "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or with an interest in an asset, including payment, gift, grant, alienation, bargain, sale, conveyance, lease, release, creation of lien or encumbrance, assignment, retention of title as a security interest, consignment, and bailments of any kind.

## GENERAL PROVISIONS

1.      Any document in Your possession or the possession of any individual or corporation over which You have custody or control, including, but not limited to, Your predecessor in interest, agents, Corporate or Trust Structures, corporations, employees and, unless privileged, attorneys is deemed to be within Your possession or control. You have the affirmative duty to contact any third party, including the foregoing, that is within Your custody or control if such third party has documentation responsive to this Subpoena.

The documents produced pursuant to this request for production of documents are to be segregated and identified by the number of the request to which the documents are responsive.

In the event You claim that any document requested is unavailable, lost, misplaced, or destroyed, state the following:

a. the date You believe such document became unavailable, lost, misplaced, or destroyed; and

b. the reason why such document became misplaced, lost, or destroyed.

In the event that You seek to withhold any document on the basis that it is covered by privilege, please provide the following information:

a. The name of each author, writer, sender, or initiator of such document or thing, if any;

b. The name of each recipient, addressee or party for whom such document or thing was intended, if any;

c. The date of such document, if any, or an estimate thereof so indicated if no date appears on the document;

d. The general subject matter as described in such document, or, if no such description appears, then such other description sufficient to identify said document; and

e. The claimed grounds for withholding the document, including, but not limited to the nature of any claimed privilege and grounds in support thereof.

For each request, or part thereof, which is not fully responded to pursuant to a privilege, the nature of the privilege and grounds in support thereof should be fully stated, and that portion of the document not claimed to be privileged shall be produced.

If production of documents or other items required by this Subpoena would be, in whole or in part, unduly burdensome, or if the response to an individual request for production may be

5

aided by clarification of the request, contact the issuer of this Subpoena, to discuss possible amendments or modifications of the Request within five (5) days of receipt of same.

Documents maintained in electronic form <u>must be produced in their native electronic form with all metadata intact</u>. Data must be produced in the data format in which it is typically used and maintained. For electronic mail systems using Microsoft Outlook or LotusNotes, provide all responsive emails and, if applicable, email attachments and any related documents, in their native file format (i.e., .pst for outlook personal folder, .nsf for LotusNotes). For all other email systems provide all responsive emails and if applicable, email attachments and any related documents in TIFF format.

      a. To the extent any electronically stored information, if produced in its native format, would be difficult or impossible to review because it would require proprietary or legacy software, said electronically stored information should be provided in Image (near-paper) format (i.e., .TIFF, or .PDF files) with a corresponding load file utilizing valid field delimiters and text qualifiers containing metadata and optical character recognition (OCR) extracted text for said electronically stored information named with the document identification (DocID) of its corresponding file.

      b. To the extent any electronically stored information is a password protected native file, the password for the native file should be provided as metadata in a text file named with the document identification (DocID) of the corresponding password protected native file.

To the extent that no single document exists or is in your possession, custody or control that contains all the information sought in any particular request, you are to provide such other documents in your possession, custody or control that are sufficient to show, compute, compile, or explain all the information sought in the request or as much information as is available.

These requests shall be deemed continuing so as to require you to reasonably supplement your responsive production if you gain knowledge that your response was incomplete.

## <u>DOCUMENTS REQUESTED</u>

1.      All Documents pertaining to the Transaction (e.g., purchase agreements, seller financing agreements, guarantee or security agreements, etc.).

2.      All corporate and trust Documents referencing the Transaction and the parties and ultimate beneficiaries thereof, including but not limited to, any member of the De Narvaez family (e.g., certificates of incorporation, trust deeds, legal opinions, etc.).

3.      All communications between you, on the one hand, and any member of the De Narvaez Family, on the other hand, regarding the Transaction and Acquired Shares.

4.      All communications between you, on the one hand, and Treuco, on the other hand, regarding the Transaction and Acquired Shares.

5.      All Documents identifying (i) the names of any shareholders in Tia Ecuador and Ta-Ta Uruguay, including but not limited to Mrs. De Narvaez, any trust for which she or her descendants is a beneficiary, or any entity for which she is a manager, owner, officer, or director, (ii) the shareholders' respective ownership percentages, and (iii) the dates on which they acquired each portion of their ownership interests.

6.      All Documents regarding the Acquired Shares' purchase price (e.g., identification of payors and payees, participating financial institutions, payment instructions, receipts, wire transfers, etc.).

7.      All Documents identifying the Source of Funds for payment of the purchase price for the Acquired Shares.

8.      All Documents regarding the distribution of dividends to shareholders of Tia Ecuador and Ta-Ta Uruguay, and their parent companies / Corporate or Trust Structures.

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

| | |
|---|---|
| _____ <br> *Plaintiff* <br> v. <br> _____ <br> *Defendant* | ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No.

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: 

_____

*(Name of person to whom this subpoena is directed)*

❏ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
| | |

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

_____ , who issues or requests this subpoena, are:

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In Re Application Of | |
| JUAN MARIA ALTGELT | Case No. |
| Applicant | |
| pursuant to 28 U.S.C. § 1782 For Judicial Assistance in Obtaining Evidence For Use in Foreign and International Proceedings. | |

**SUBPOENA TO ROBERT BRINK**

**SCHEDULE 1**

**DEFINITIONS**

As used in this request, the following words shall have the following meanings:

1.      "You" or "Your" means the person to whom this subpoena is directed, as well as any of your agents, Corporate or Trust Structures, attorneys, employees, accountants, or consultants, acting for or on your behalf with respect to the Transaction, as defined herein.

2.      "Applicant" means Juan Maria Altgelt.

3.      "Mrs. De Narvaez" means Maria Isabel de Narvaez, as well as any of her agents, Corporate or Trust Structures, attorneys, employees, accountants, or consultants, acting for or on her behalf with respect to the Transaction, as defined herein.

4.      "De Narvaez Family" means Francisco De Narvaez, Juana De Narvaez, and Maria Isabel de Narvaez (together with their descendants), as well as any of their agents, Corporate or Trust Structures, attorneys, employees, accountants, or consultants, acting for or on their behalf with respect to the Transaction, as defined herein.

5.      "Treuco" means the Swiss wealth management firm, as well as any of its directors, officers, members, partners, predecessors, successors, agents, Corporate or Trust Structures,

attorneys, employees, or consultants, acting for or on behalf of Ta-Ta S.A, Tiendas Industriales Asociadas (Tía) S.A., and the De Narvaez Family.

6.      "Tía" means the South American multinational group of companies dedicated to the retail business, as well as any of its directors, officers, members, partners, predecessors, successors, agents, Corporate or Trust Structures, attorneys, employees, or consultants, acting for or on behalf of.

7.      "Tia Ecuador" means Tiendas Industriales Asociadas (Tía) S.A., as well as any of its directors, officers, members, partners, predecessors, successors, agents, Corporate or Trust Structures, attorneys, employees, or consultants, acting for or on behalf of Tiendas Industriales Asociadas (Tía) S.A.

8.      "Ta-Ta Uruguay" means Ta-Ta S.A., as well as any of its directors, officers, members, partners, predecessors, successors, agents, Corporate or Trust Structures, attorneys, employees, or consultants, acting for or on behalf of Ta-Ta S.A.

9.      "Transaction" means the sale of your share ownership in Tía Ecuador and Ta-Ta Uruguay to the De Narvaez Family (either directly or indirectly) in 2014.

10.     "Corporate or Trust Structures" means any and all corporate or trust structures, arrangements, agreements, deeds, or any other instruments which directly or indirectly may have been a party to the Transaction, or may have been used to directly or indirectly hold ownership over the Acquired Shares, either before, during, or after the Transaction, including but not limited to Grant Invest PTE LTD (Limited Private Company – Singapore), Innoparticipations LP (Body Corporate – New Zealand), Innovent Investment LP (Limited Partnerhip – Scotland UK), Innovent Investment SA (Aktiengesellschaft - Switzerland), Tienda Investment PTE LTD (Excempt Private Company Limited By Shares - Singapore), Innovent Services Limited (Limited Company – New Zealand), Dulas Holding SA (St. Vincent & Granadines), Innovent Partner LP (Private Limited Company – Scotland UK), Chenin Investment PTE LTD (Private Company Limited By Shares - Singapore), EEMO Investment Corp (St. Vincent & Granadines), Epiro Property SA (Belize), Namika Commercial Corp (Belize), Myana Business Limited (St. Vincent & Granadines), Sulma Trust, Sulma I Trust, Sulma II Trust, Sulma III Trust, United Textile Works LLC, Enterprises

2

Textiles Reunies Societe Anonyme, VEREINIGTE TEXTILWERKE AKTIENGESELLSCHAF, Pierron Properties, Grant Investment Properties LTD, Dribel SA, Inmovera, or Iru ANY SRL.

11.     "Acquired Shares" means the shares Tía Ecuador and Ta-Ta Uruguay sold (directly or indirectly) to the De Narvaez Family by way of the Transaction.

12.     The term "communication(s)" means any oral, written or electronically stored information which constitutes a transmission of information, including, but not limited to, correspondence, e-mail (sent and received), conversations, dialogue, meetings, discussions, interviews, telephone calls, voice-messages, consultations, agreements, understandings between or among two or more persons, telegrams, telecopies, telexes, seminars, conferences, messages, notes or memoranda.

13.     "Document" shall have the same meaning and scope as "documents or electronically stored information" within the meaning of Federal Rule of Civil Procedure 34(a)(1)(A).  The term "document" is intended to include "communications."

14.     The terms "and" and "or" shall be construed conjunctively or disjunctively as is necessary to make the request for production inclusive rather than exclusive.

15.     The term "any" means "all" and vice versa.

16.     The term "including" means including but not limited to.

17.     The singular shall be construed to include the plural, and vice versa, to make the Request inclusive rather than exclusive.

18.     "Person" means natural person(s), corporation(s), association(s), partnership(s), sole proprietorship(s) or public entity(ies).

19.     "Related to" or "relating to" means constitute, regarding, refer to, reflect, mention, evidence, concern, pertain to, arise out of, summarize, analyze, or be logically or factually connected in any way with the matter discussed.

20.     "Relevant Period" refers to the period of time from July 1, 2014 to the date of Your response to this Request. **Unless otherwise stated, all Requests refer only to the Relevant Period.**

21.     "Source of Funds" shall mean the exact account that initiates a payment, including the name of the account holder, account number, bank name, and bank address or routing number.

22.     "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or with an interest in an asset, including payment, gift, grant, alienation, bargain, sale, conveyance, lease, release, creation of lien or encumbrance, assignment, retention of title as a security interest, consignment, and bailments of any kind.

## **GENERAL PROVISIONS**

1.      Any document in Your possession or the possession of any individual or corporation over which You have custody or control, including, but not limited to, Your predecessor in interest, agents, Corporate or Trust Structures, corporations, employees and, unless privileged, attorneys is deemed to be within Your possession or control. You have the affirmative duty to contact any third party, including the foregoing, that is within Your custody or control if such third party has documentation responsive to this Subpoena.

The documents produced pursuant to this request for production of documents are to be segregated and identified by the number of the request to which the documents are responsive.

In the event You claim that any document requested is unavailable, lost, misplaced, or destroyed, state the following:

    a. the date You believe such document became unavailable, lost, misplaced, or destroyed; and

    b. the reason why such document became misplaced, lost, or destroyed.

In the event that You seek to withhold any document on the basis that it is covered by privilege, please provide the following information:

    a. The name of each author, writer, sender, or initiator of such document or thing, if any;

    b. The name of each recipient, addressee or party for whom such document or thing was intended, if any;

    c. The date of such document, if any, or an estimate thereof so indicated if no date appears on the document;

    d. The general subject matter as described in such document, or, if no such description appears, then such other description sufficient to identify said document; and

    e. The claimed grounds for withholding the document, including, but not limited to the nature of any claimed privilege and grounds in support thereof.

For each request, or part thereof, which is not fully responded to pursuant to a privilege, the nature of the privilege and grounds in support thereof should be fully stated, and that portion of the document not claimed to be privileged shall be produced.

If production of documents or other items required by this Subpoena would be, in whole or in part, unduly burdensome, or if the response to an individual request for production may be

aided by clarification of the request, contact the issuer of this Subpoena, to discuss possible amendments or modifications of the Request within five (5) days of receipt of same.

Documents maintained in electronic form <u>must be produced in their native electronic form with all metadata intact</u>. Data must be produced in the data format in which it is typically used and maintained. For electronic mail systems using Microsoft Outlook or LotusNotes, provide all responsive emails and, if applicable, email attachments and any related documents, in their native file format (i.e., .pst for outlook personal folder, .nsf for LotusNotes). For all other email systems provide all responsive emails and if applicable, email attachments and any related documents in TIFF format.

    a. To the extent any electronically stored information, if produced in its native format, would be difficult or impossible to review because it would require proprietary or legacy software, said electronically stored information should be provided in Image (near-paper) format (i.e., .TIFF, or .PDF files) with a corresponding load file utilizing valid field delimiters and text qualifiers containing metadata and optical character recognition (OCR) extracted text for said electronically stored information named with the document identification (DocID) of its corresponding file.

    b. To the extent any electronically stored information is a password protected native file, the password for the native file should be provided as metadata in a text file named with the document identification (DocID) of the corresponding password protected native file.

To the extent that no single document exists or is in your possession, custody or control that contains all the information sought in any particular request, you are to provide such other documents in your possession, custody or control that are sufficient to show, compute, compile, or explain all the information sought in the request or as much information as is available.

These requests shall be deemed continuing so as to require you to reasonably supplement your responsive production if you gain knowledge that your response was incomplete.

## DOCUMENTS REQUESTED

1.      All Documents pertaining to the Transaction (e.g., purchase agreements, seller financing agreements, guarantee or security agreements, etc.).

2.      All corporate and trust Documents referencing the Transaction and the parties and ultimate beneficiaries thereof, including but not limited to, any member of the De Narvaez family (e.g., certificates of incorporation, trust deeds, legal opinions, etc.).

3.      All communications between you, on the one hand, and any member of the De Narvaez Family, on the other hand, regarding the Transaction and Acquired Shares.

4.      All communications between you, on the one hand, and Treuco, on the other hand, regarding the Transaction and Acquired Shares.

5.      All Documents identifying (i) the names of any shareholders in Tia Ecuador and Ta-Ta Uruguay, including but not limited to Mrs. De Narvaez, any trust for which she or her descendants is a beneficiary, or any entity for which she is a manager, owner, officer, or director, (ii) the shareholders' respective ownership percentages, and (iii) the dates on which they acquired each portion of their ownership interests.

6.      All Documents regarding the Acquired Shares' purchase price (e.g., identification of payors and payees, participating financial institutions, payment instructions, receipts, wire transfers, etc.).

7.      All Documents identifying the Source of Funds for payment of the purchase price for the Acquired Shares.

8.      All Documents regarding the distribution of dividends to shareholders of Tia Ecuador and Ta-Ta Uruguay, and their parent companies / Corporate or Trust Structures.

Exhibit "3"

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In Re Application Of | |
| | Case No. |
| JUAN MARIA ALTGELT | |
| Applicant | |
| | |
| pursuant to 28 U.S.C. § 1782 | |
| For Judicial Assistance in Obtaining | |
| Evidence For Use in Foreign and International | |
| Proceedings. | |

**[PROPOSED] ORDER GRANTING *EX PARTE* APPLICATION**
**FOR ASSISTANCE PURSUANT TO 28 U.S.C §1782**

THIS CAUSE came before the Court upon the *Ex Parte* Application for Assistance Pursuant to 28 U.S.C. § 1782 (the "Application") filed by Juan Maria Altgelt ("Applicant"). The Court, having considered the § 1782 Application and supporting materials and otherwise being fully advised in the premises, finds as follows:

A.       Applicant has met the requirements under 28 U.S.C. § 1782 for granting the requested judicial assistance.

B.       For purposes of the instant Application, the Court finds Applicant seeks documentary and testimonial evidence from Allison Kaye Deutsch, Robert Brink, Julia Andrea Deutsch, and Frederick Lawrence Deutsch, who reside or are found in the Eastern District of Pennsylvania (collectively, "Discovery Targets").

C.       The documentary and testimonial discovery sought through this Application is for use in a divorce proceeding in Argentina pending before the Family Courts sitting in the City of San Isidro, province of Buenos Aires (the "Foreign Proceeding").

2574267.1

D.      Further, as a party to the Foreign Proceeding, Applicant is an interested person within the meaning of 28 U.S.C. § 1782.

E.      The discretionary factors, as described by the United States Supreme Court in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004), weigh in favor of granting the requested assistance.

F.      More particularly: (1) the Discovery Targets are not parties to the pending proceedings in Argentina and are not expected to become parties thereto; thus, the need for this discovery is more apparent; (2) there is no indication that the Argentine courts would not be receptive to U.S. federal court judicial assistance as requested in the Application; (3) the Application does not conceal an attempt to circumvent Argentine proof-gathering restrictions; and (4) the Application seeks discovery that is not unduly intrusive or burdensome.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** as follows:

1.      The Application is **GRANTED**.

2.      Any discovery taken pursuant to this Order, including related motion practice, shall be governed by the Federal Rules of Civil Procedure.

3.      Applicant is authorized to issue and serve a subpoena on each of the Discovery Targets in substantially similar form to the subpoenas attached to the Application as Composite Exhibit B.  The Applicant is further authorized to issue and serve additional follow up subpoenas on the Discovery Targets as may be necessary to obtain documentary and testimonial evidence for use in the Foreign Proceeding.

4.      The Discovery Targets are ordered to preserve all relevant and potentially relevant evidence in their possession, custody or control until further order of this Court.

2574267.1

5.      Nothing in this Order should be construed to prevent or otherwise foreclose the Applicant from seeking modification of this Order or leave of Court to serve any additional subpoena on a person or entity.

IT IS SO ORDERED, this _____ day of _____, 2020.


_____

UNITED STATES DISTRICT COURT JUDGE